623 A.2d 1305

Cynthia R. MITCHELL

v.

GIANT FOOD, INC.

No. 1413, Sept. Term, 1992.

Court of Special Appeals of Maryland.

May 3, 1993.

Certiorari Granted Aug. 25, 1993.

W. Ray Ford, Bowie, for appellant.

Neil J. MacDonald (DeCaro, Doran, Siciliano, Gallagher, Sonntag & DeBlasis, on the brief), Lanham, for appellee.

Argued before MOYLAN and BLOOM, JJ., and JAMES S. GETTY, Judge (Retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

The issue of the liability of a storekeeper for injury to a customer arising out of the pursuit of a suspected shoplifter by an employee has not heretofore been addressed by our appellate courts.

On May 10, 1986, Cynthia Mitchell was at Kettering Plaza in Prince George's County, assisting with a bake sale. After concluding her participation in the bake sale, shortly before 2:00 p.m., Ms. Mitchell approached one of the two entrances to a Giant Food market located within the Kettering Plaza complex. Her purpose was to complete her Saturday grocery shopping.

The two entrances to the Giant Market have two sets of glass doors, each set has two doors, one for patrons entering the store and one for those exiting the premises. The outer doors adjoin a sidewalk and the inner doors permit entry into the market area. The short space between the two sets of doors forms an enclosed walkway. Both sets of doors open automatically as a shopper approaches the door area.

Approximately nine feet from the east entrance door is a parcel pick-up area delineated by a line of metal grating that establishes the outer boundary of the pick-up areas. The grating is spaced to allow customers, but not shopping carts, to pass between the sections when entering or leaving the area.

An unwary Cynthia was walking through the parcel pick-up area toward the store entrance when she noticed a man leaving the store followed by a store employee. What she observed at the time did not appear unusual and gave her no cause to fear for her safety. As she took several more steps

toward the entrance, the suspect, then being pursued by a store employee, ran into Ms. Mitchell, knocking her to the pavement and causing her to strike her forehead on the metal grating beside her. The suspect fell on top of Ms. Mitchell and a scuffle ensued between the suspect and the store employee as Ms. Mitchell lay on the pavement. From this incident Ms. Mitchell suffered multiple injuries; the suspect escaped both injury and apprehension.

The store employee, Glen Dye, was engaged in his duties as a management trainee at the Kettering Plaza Giant market. While observing the activity within the market, Mr. Dye observed a young man stop a grocery cart near the manager's office at the front of the store. The man removed a shopping bag from the cart and proceeded toward the exit and Mr. Dye followed him. As the man stepped on the treadle causing the inner exit door to open, Mr. Dye, who was then directly behind the person being followed, observed approximately nine cartons of cigarettes inside the bag. Believing that a shoplifting was taking place, Mr. Dye attempted to grab the bag. A struggle ensued and the suspect broke free and ran through the second exit door with Mr. Dye in pursuit. A second scuffle ensued between the suspect and Mr. Dye after Ms. Mitchell had been knocked to the ground and the suspect had fallen on top of her.

On these facts Ms. Mitchell filed suit against Giant Food, alleging that Giant was negligent in that it knew or should have known that shoplifting would occur on the premises and that shoplifters posed a threat to the safety of its customers. The complaint asserted that Giant adopted a policy authorizing all personnel to aid in the detection and apprehension of shoplifters without providing any training to non-security personnel in order to minimize the risk posed to customers. Nor did Giant warn customers of the potential harm to business invitees by shoplifting suspects.

At the conclusion of Ms. Mitchell's case on March 4, 1992, Giant filed a motion for judgment. The court reserved its ruling on the motion and the case was submitted to the jury following a second motion for judgment when Giant declined

to present any further evidence. The jury eventually reported that it was deadlocked "eleven to one for the plaintiff." No harm was done by the jury's announcing the box score in reporting that a unanimous verdict could not be returned, because the court dismissed the jury without further comment. Thereafter, the case was briefed and argued before the trial judge on a renewed motion for judgment filed by Giant. By written order dated May 15, 1992, the court granted Giant's motion. From that judgment, Ms. Mitchell appealed to this Court.

The trial judge clearly relied upon reported cases from Wisconsin, Florida and Minnesota in granting summary judgment for Giant. He said:

> In the present case the record is barren of any evidence from which the defendant store could have anticipated violence on the part of the shoplifter.

This reasoning is consistent with the holding in the following cases: *Graham v. Great Atlantic and Pacific Tea Company,* 240 So.2d 157 (Fla.1970); *Maloney v. Great Atlantic and Pacific Tea Company,* 369 So.2d 590 (Fla.1978); *Radloff v. National Food Stores, Inc.,* 20 Wis.2d 224, 121 N.W.2d 865 (1963); and *Knight v. Powers Dry Goods Co., Inc.,* 225 Minn. 280, 30 N.W.2d 536 (1948).

In *Graham, supra,* a shoplifter, who voluntarily returned to the store with the store manager, bolted and ran toward an exit where he collided with a customer who was injured as a result of the collision. The Florida court upheld a lower court dismissal of the case although acknowledging that the principal question in such a case is one of foreseeability. The court held that:

> Unless defendant should reasonably have anticipated violence on the part of the suspected shoplifter, then clearly it had no duty to take the extraordinary safety measures alleged by the plaintiff to have been negligently omitted.

A more egregious factual scenario was described in *Maloney, supra,* involving a "rather extended chase up and down the aisles" of the store, culminating in a customer being

knocked down and injured. Despite evidence of thirty to fifty shoplifting attempts per day,[1] the A & P employees were not instructed on how to deal with shoplifters, or whether and to what extent they should be chased. The court, however, upheld the granting of summary judgment upon the same rationale stated in *Graham.*

The Supreme Court of Wisconsin reversed a judgment against a storekeeper in *Radloff, supra,* on the following facts: Two store employees observed a man place two cartons of cigarettes under his jacket and leave the premises. The shoplifter was detained by the employees and agreed to return to the store manager's office. En route to the rear of the store he pushed one of the employees to the floor and ran out the front exit. As he was running through a check-out aisle, one of the employees yelled, "Stop, you thief." Ignoring the request, the shoplifter continued running and knocked a customer to the floor in the course of his escape.

A divided court held that a directed verdict should have been entered, because only the plaintiffs testified and there was no testimony showing knowledge on the part of the storekeeper or his employees that the shoplifter would take such action as he did and injure another customer. Thus, the majority held there was no *prima facie* case giving rise to a jury determination of whether the storekeeper or his employees had discovered or by the exercise of reasonable care could have discovered that the shoplifter was about to do acts threatening bodily harm to other customers. Two dissenting justices would have affirmed the jury verdict for the plaintiff.

In *Knight, supra,* the Supreme Court of Minnesota held that a storekeeper was not liable to a customer who was knocked down and injured by a fleeing shoplifter. The court reasoned that "until [the shoplifter] started to run, there is no evidence that the defendant knew or should have known that

---

1. Presumably, the daily attempts were an accumulation of incidents throughout the chain of stores and not from the single store involved in the case.

he was vicious." The employees "did not know they were dealing with a vicious or violent person."

In each of the cases cited above the courts concluded that a plaintiff must demonstrate that the defendant should have foreseen that the specific shoplifter in question was dangerous. More recent cases, however, analyze the issue within the context of the principles set forth in section 344 and 448 of the Restatement (Second) of Torts.

*Passovoy v. Nordstrom,* 52 Wash.App. 166, 758 P.2d 524 (1988), represents that state's first case discussing a merchant's liability to its patrons for injury caused by a fleeing shoplifter. A Nordstrom store detective observed two men surreptitiously place clothing into bags. He notified a second security officer and they decided to confront the men in the store. While being escorted to the security office, one of the suspects fled and knocked down two customers on a stairway. One of the detectives pursued the suspect yelling, "Stop that man." Detectives from an adjoining store caught the suspect.

The trial court granted summary judgment to Nordstrom; the Court of Appeals reversed. Citing sec. 344(b) of the Restatement,[2] the Court held that whether the pursuing detective could have given a warning adequate to enable the two customers to avoid the harm presents a material issue of fact that precludes summary judgment.

Nordstrom's second argument was that it was not the proximate cause of the injuries because the suspect's criminal act was unanticipated and, therefore, a superseding cause of the accident. The court disposed of this contention, stating:

---

**2.** Sec. 344, Restatement (Second) Torts:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(v) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Only when the intervening negligence is so highly extraordinary or unexpected that it can be said to fall outside the realm of reasonable foreseeability, as a matter of law, will it be held to supersede the defendant's negligence.

The likelihood that a shoplifter may flee, or collide with other customers while escaping, did not impress the court as being unforeseeable.

Summary judgment for a store owner was also reversed in *Jones v. Lyon Stores,* 82 N.C.App. 438, 346 S.E.2d 303 (1986). The practice in these stores was to lock the exit doors when a shoplifting was in progress and call the police. The system was successful for over a year until a shoplifter, realizing the exit doors were locked, timed the automatic opening of an entrance door and bowled over a customer entering the premises while the suspect was making his escape.

The North Carolina Court of Appeals recognized that foreseeability is the test for determining a business owner's duty to safeguard its business invitees from the acts of third persons. Accordingly, the court held that whether it was reasonably foreseeable that the suspect would flee, and whether it was reasonably foreseeable that by locking the exit doors the defendant's employees increased the risk of harm to invitees on the premises can only be answered by a jury.

### The Case Sub Judice

Giant does not dispute that at the time of the injury to Ms. Mitchell she was a business invitee, nor does it deny that it had a duty to exercise reasonable care to ensure that customers such as Ms. Mitchell could enter or leave the premises without unreasonable risk of being injured in the process. Giant's contention is that it exercised reasonable and ordinary care and that it had no way of knowing that the shoplifter had any vicious or violent propensities, or that he would flee and, in that attempt, would injure Ms. Mitchell. For these reasons, Giant urges that the trial court properly granted its motion for summary judgment. We disagree.

From the record we discern that Giant's in-house security is provided by its loss prevention department. A district super-

intendent acknowledged that loss prevention was concerned, in part, with customer safety. Throughout its local chain of food stores, Giant makes several hundred arrests each year for shoplifting. Included in that total are several acts of shoplifting that occurred at the Kettering Plaza location prior to the incident in May, 1986 involving Ms. Mitchell. The record further establishes that no customer injuries ever resulted from prior apprehension activities by Giant employees.

At the time of this incident involving Ms. Mitchell, each Giant employee was authorized to apprehend suspected shoplifters, but they received no specific instructions regarding the potential risk to customers while engaged in detaining suspected shoplifters. Although they were instructed on the law of arrest and probable cause for an arrest, apprehension of suspected shoplifters was apparently committed to the discretion of each employee. Glen Dye, the pursuer in this case, could not recall receiving any instruction from Giant regarding the procedure to be followed in detaining suspects, notwithstanding that he had been employed for six years.

## The Law

The Court of Appeals has made clear that, as a settled principle of law, a storekeeper is not an insurer of the safety of persons who come upon the premises for business purposes. *Moulden v. Greenbelt Consumer Services, Inc.,* 239 Md. 229, 210 A.2d 724 (1965); *Dalmo Sales of Wheaton v. Steinberg,* 43 Md.App. 659, 407 A.2d 339 (1979). What is required of a storekeeper as a positive, affirmative duty, however, is:

> ... to protect them (customers), not only against dangers which may arise from some defect or unsafe condition of the physical property upon which they are entitled to enter, but against danger which may be caused by the negligent acts of his employees, or even of customers, where, as a reasonably prudent person, he should have anticipated the possible occurrence and the probable results of such acts.

*Everly v. Baker,* 168 Md. 599, 178 A. 691 (1935).

The standard of reasonableness in deciding whether a storekeeper should have anticipated the possibility of injury to a

business invitee brings into play the elements of that standard, proximate cause and foreseeability. *Scott v. Watson,* 278 Md. 160, 359 A.2d 548 (1976); *Dalmo Sales, supra.* Within the context of third party criminal activity that we are dealing with in this case, proximate cause and foreseeability may be measured by the rule set forth in Restatement (Second) of Torts, sec. 448:

> The acts of a third person committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Section 448 was cited with approval by the Court of Appeals in *Scott v. Watson, supra.* In that case, involving the fatal shooting of a tenant in an underground garage of an apartment building, Chief Judge Murphy stated:

> In the present state of modern society, this [sec. 448] would seem to be a fair solution of the causation problem in this context. A breach of duty by the defendant would result in his liability in the third party criminal activity context only if the breach enhanced the likelihood of the particular criminal activity which occurred.

In *Dalmo Sales, supra,* Chief Judge Wilner authored a thorough discussion of the elements of causation and foreseeability as those terms apply to injuries sustained by business invitees from the acts of third parties on a store owner's premises. The storekeeper in *Dalmo* argued that it could not reasonably be expected to anticipate or foresee the "freakish" combination of events that led to this tragedy.[3]

We said that

---

**3.** In *Dalmo,* cars were permitted to park facing the glass storefront. No curbing separated the roadway from the walkway in front of the

... in terms of establishing both general negligence (*i.e.*, the duty owed and its breach) and approximate causation, foreseeability is not to be viewed in the narrow context suggested by Luskins. Under these precepts, it is not the "freakish" chain of circumstances that actually occurred here that must be reasonably foreseeable, but rather the more general class of harm that might occur to invitees walking upon the sidewalk from the movement of encroaching vehicles.

43 Md.App. at 673, 407 A.2d 339.

▉ Thus, in the present case, it is not whether Giant's employee could foresee that the shoplifter would flee, but whether it was reasonably foreseeable that a shoplifter may flee when taken into custody, thereby exposing customers to injury, and whether a pursuing employee could have warned customers of the fleeing shoplifter in order that they could avoid injury. These issues are for the jury to determine. The question of reasonable foreseeability, as part of the question of proximate causation, is ordinarily a question for the jury. *See Little v. Woodall*, 244 Md. 620, 224 A.2d 852 (1966).

In *Segerman v. Jones*, 256 Md. 109, 259 A.2d 794 (1969), a negligence action in which foreseeability was an issue, the Court adopted the following language:

Whether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated.

256 Md. at 132, 259 A.2d 794 (citing *McLeod v. Grant County School Dist.*, 42 Wash.2d 316, 321, 255 P.2d 360 (1953)).

---

store. A car parked facing the store would not start and the driver induced another driver to park alongside the disabled vehicle so that it could be "jump started." The driver connected the cables and reached in from the passenger's side and turned the ignition key. The car leaped forward striking a woman and knocking her through the plate glass windows, resulting in serious injury.

A consistent view of foreseeability is set forth in *Moran v. Faberge*, 273 Md. 538, 551–52, 332 A.2d 11, to wit:

> The sequence of events, of course, need not be foreseeable. The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present. Harper, *A Treatise on the Law of Torts*, § 7 (1933).

We submit that there is no reliable test that will determine the reaction of a shoplifter caught in the act. Some will submit meekly, others may resort to tears and beg forgiveness, some will flee, and still others may react with physical violence directed toward anyone present. It is not a defense, as a matter of law, that the storekeeper can assert that he did not know the thief would flee. Common sense would indicate that if fleeing would preclude prosecution, the hares would certainly outnumber the tortoises. This is especially true in the case where the storekeeper provoked the dangerous course of action by grabbing the bag from behind, wrestling with the thief in the walkway, and attempting to subdue him again while either or both of them were on top of Ms. Mitchell. Pellucidly, the issues of foreseeability and proximate cause are for the jury.

JUDGMENT REVERSED.

REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR TRIAL.

COSTS TO BE PAID BY APPELLEE.