640 A.2d 1134

GIANT FOOD, INC.

v.

Cynthia Robin MITCHELL.

No. 70, Sept. Term, 1993.

Court of Appeals of Maryland.

May 12, 1994.

Thomas L. Doran, (DeCaro, Doran, Siciliano, Gallaher, Sonntag & DeBlasis, all on brief), Neil J. MacDonald, on brief, Lanham, for petitioner.

W. Ray Ford, Bowie, for respondent.

Argued·before MURPHY, C.J., RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ., and CHARLES E. ORTH, Jr.,** Judge (retired), Specially Assigned.

RODOWSKY, Judge.

While walking toward the nearby entrance to a supermarket of the petitioner, Giant Food, Inc. (Giant), the respondent, Cynthia Robin Mitchell (Ms. Mitchell), was run into and injured by a shoplifter who was fleeing from the store on foot. Ms. Mitchell sued Giant, contending that a Giant management trainee, Glenn Dye (Dye), had negligently confronted the

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Orth, J., participated in the hearing and conference of this opinion but died prior to its adoption by the Court.

shoplifter within the store. Here we review, under the law of business invitees, the sufficiency of Ms. Mitchell's evidence that Giant was negligent, an issue on which the trial court and the Court of Special Appeals reached different conclusions.

■ The general principles governing liability in a case of this type may be stated briefly. Giant is a storekeeper and Ms. Mitchell was its invitee. Storekeepers owe their invitees a duty of ordinary care to maintain their premises in a reasonably safe condition. *Moulden v. Greenbelt Consumer Serv.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965). What constitutes "ordinary care" depends upon the circumstances. *Dickey v. Hochschild, Kohn & Co.*, 157 Md. 448, 451, 146 A. 282, 283 (1929). Thus, "conduct, which under one set of circumstances would constitute ordinary care, might under others be wholly insufficient to gratify the demands of that term." *Id.*

■ Storekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises. *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 118, 113 A.2d 405, 408 (1955). A storekeeper's liability in negligence for a customer's injuries arises only from a failure to observe the duty of ordinary care. *Moulden*, 239 Md. at 232, 210 A.2d at 725; *Safeway Stores, Inc. v. Bolton*, 229 Md. 321, 326, 182 A.2d 828, 830 (1962). Storekeepers who know, or by the exercise of ordinary care would discover, a dangerous condition that they have no reason to believe their customers will discover, may be held liable for injuries incurred as a result of that condition. *Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 239, 164 A.2d 273, 276 (1960); *Yaniger v. Calvert Bldg. & Constr. Co.*, 183 Md. 285, 289, 37 A.2d 263, 265 (1944).

■ A storekeeper's duty to use ordinary care to protect business invitees applies

"not only against dangers which may arise from some defect or unsafe condition of the physical property . . . but against dangers which may be caused by negligent acts of his

employees, or even of customers, where, as a reasonably prudent person, he should have anticipated the possible occurrence and the probable results of such acts."

*Eyerly v. Baker,* 168 Md. 599, 607, 178 A. 691, 694 (1935). *Eyerly* held, *inter alia,* that a storekeeper was not liable for injuries sustained by a customer in a revolving door that had been given a sudden, violent, and unexpected impetus by a third party.

In another revolving door accident case, in which an elderly woman was injured when two male youths spun the non-defective door with great force, the plaintiff proved that five, similar, personal injury accidents had occurred at the defendant's store between December 13, 1968 and August 11, 1970. *Litz v. Hutzler Bros. Co.,* 20 Md.App. 115, 121, 314 A.2d 693, 696 (1974). Affirming a judgment for the defendant entered at the end of the plaintiff's case, the court held that the prior incidents

"do not, singly or collectively, provide a base for application of the rule declared in *Eyerly*.... They do no more than demonstrate that use of a revolving door necessarily involves some risk of harm to its user. That risk is not, however, an unreasonable risk such as gives rise to a duty to warn of danger incident to it. The inherent risk was as well known to its user as to the storeowner."

*Id.* at 123, 314 A.2d at 697.

In the case before us the Circuit Court for Prince George's County reserved ruling on Giant's motion for judgment at the conclusion of all of the evidence. The case was submitted to the jury which was unable to reach a verdict.[1] Thereafter, the trial judge entered judgment for Giant. The circuit court concluded that "Dye was certainly acting within the realm of reasonableness when he apprehended the shoplifter within the

---

1. A note from the jury advised that the division was eleven for the plaintiff and one for the defendant.

store," and that there was no evidence from which Giant "could have anticipated violence on the part of the shoplifter."

Ms. Mitchell appealed to the Court of Special Appeals. There Giant contended "that it exercised reasonable and ordinary care and that it had no way of knowing that the shoplifter had any vicious or violent propensities, or that he would flee and, in that attempt, would injure Ms. Mitchell." *Mitchell v. Giant Food, Inc.,* 96 Md.App. 146, 152, 623 A.2d 1305, 1309 (1993). The intermediate appellate court, however, after quoting the rule from *Eyerly* set forth above, concluded that "the issues of foreseeability and proximate cause are for the jury." *Id.* at 156, 623 A.2d at 1311. This Court granted Giant's petition for certiorari.

The facts relevant to liability and most favorable to the plaintiff are these. At approximately 2:00 p.m. on Saturday, May 10, 1986, the day before Mother's Day, Ms. Mitchell and her mother, Viola Mitchell (Mrs. Mitchell), were at the Kettering Plaza Shopping Center in Largo, Maryland. Intending to do their food shopping in the Giant store at Kettering Plaza, they walked toward the eastern entrance to the Giant premises. Ms. Mitchell observed "customers going in and out of the store."

The entrance approached by the Mitchells has two sets of glass, double doors that form opposite ends of a short, rectangular, enclosed walkway or vestibule that is parallel to the outside wall of the store. One doorless side of the vestibule is enclosed by the brick, exterior wall of the store. The other doorless side is enclosed by a wall of glass panels in metal studding. From the perspective of one standing outside of the entrance and facing the outer set of doors, the right-side doors of the outer and of the inner sets of doors are for persons entering the store. From the perspective of a person standing inside the store and facing the inner set of doors, the right-side doors of the inner and outer sets of doors are for persons exiting the store. Within the enclosed vestibule the lanes for persons entering and exiting the store are separated

by a vertical metal grating or railing approximately waist high in relation to an adult of average height. The entrance and exit lanes in the vestibule are each of a width that comfortably would accommodate passage of adults only in single file. Each of the four doors opens separately and automatically through a pneumatic system triggered by the weight of a pedestrian on a treadle.

Outside of the vestibule is an area delineated by segments of vertical grating or railings. The width of each open space between segments allows one person at a time to pass through, but each opening is too narrow to permit a shopping cart to pass through. The area within these segments of vertical grating is referred to as the parcel pickup area or shopping cart corral.

Ms. Mitchell entered the cart corral through an opening that was approximately eight to nine feet from the outer set of doors at the entrance that she intended to use. As she did so, she saw nothing unusual. There was a man on his way out of the store with a Giant employee behind him. The man whom she saw was "frail, thin, . . . young." Ms. Mitchell testified that when she was two or three feet inside of the parcel pickup area "[s]omething . . . bumped against" her, spun her around, and knocked her off of her feet. She struck her forehead and face on the railing as she fell to the ground.

When asked to describe where she was when her daughter was struck, Mrs. Mitchell testified:

"Well, I was going in, I think I was in front of her. It was the day before Mother's Day and there were a lot of people there but I was going into Giant. I was inside of the grate."

She said that "a man came running out of the Giant and shoved [Ms. Mitchell] down, and she hit her head on a grating and a Giant employee came running after this man. . . ." The Giant employee fell on top of Ms. Mitchell. The incident happened "[v]ery quick and very sudden."

It is undisputed that the young man who first ran into Ms. Mitchell was a shoplifter, that the Giant employee was Dye, and that the shoplifter escaped.

Dye was called as a witness by the plaintiff. He testified that he first observed the suspected shoplifter parking a grocery cart next to the manager's office in the front of the store. The cart was full of groceries, but from the center of the cart the suspect removed a shopping bag, the contents of which were unknown to Dye. The suspect, with the bag, walked rather quickly toward the exit door, leaving the groceries behind in the cart. Dye wanted to know what was in the shopping bag. He followed, at a faster pace than the suspect. After the suspect had stepped on the treadle to open the exit door on the inner side of the vestibule, and as the suspect was going through that first door, Dye was able to look into the bag and see that it contained cartons of cigarettes. Dye estimated the value of the cigarettes to be over $100.

In the enclosed walkway, Dye grabbed for the bag. The shoplifter grabbed it back, and the bag dropped to the floor of the vestibule while the two struggled. Both Dye and the thief fell to the floor. The thief broke free, got to his feet, ran through the outer door of the vestibule, and collided with Ms. Mitchell in the parcel pickup area. Dye had gotten up as quickly as he could, and was at the outer exit door of the vestibule when the thief collided with Ms. Mitchell. Thirty seconds elapsed, by Dye's estimate, from the time when he first observed the thief take the shopping bag out of the cart to the time when the thief collided with Ms. Mitchell.

Ms. Mitchell contends, as a general proposition, that a merchant who confronts a shoplifter should foresee that the shoplifter may flee. Specifically, Ms. Mitchell contends that Dye should have foreseen, when he decided to confront the shoplifter, that the thief might run through the outer exit door into the parcel pickup area where "there were a lot of people," so that Dye acted negligently because he endangered customers and thereby breached the storekeeper's duty. Giant, on

the other hand, contends that Dye acted reasonably as a matter of law under the circumstances presented here.

The Court of Special Appeals focused its analysis on proximate cause and foreseeability. That court said:

> "The standard of reasonableness in deciding whether a storekeeper should have anticipated the possibility of injury to a business invitee brings into play the elements of that standard, proximate cause and foreseeability. *Scott v. Watson,* 278 Md. 160, 359 A.2d 548 (1976).... Within the context of third party criminal activity that we are dealing with in this case, proximate cause and foreseeability may be measured by the rule set forth in Restatement (Second) of Torts, sec. 448:
>
> > 'The acts of a third person committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.' "

96 Md.App. at 153–54, 623 A.2d at 1309–10.

Section 448 concerns itself with whether the criminal act of a third person is a superseding cause of the actor's negligence. For the purpose of § 448 the actor's negligence is a given. For example, the wrongful death claim in *Scott v. Watson,* 278 Md. 160, 359 A.2d 548 (1976), cited by the Court of Special Appeals, arose out of the murder of a tenant in the garage of the landlord-defendant's high-rise apartment building. One issue was whether the crime of murder broke the causal connection between the landlord's allegedly negligent failure to provide adequate security and the tenant's death.

In the case *sub judice* we may assume, without affecting our analysis, that the shoplifter intentionally collided with Ms. Mitchell. We shall also assume that such an intentional tort

or crime in the course of flight by the thief, with pursuit by the storekeeper, was not so remote as to fail to generate a jury issue on whether there was proximate causation between negligence, if any, on the part of Dye, and Ms. Mitchell's injuries.[2] But, as we shall explain more fully below, the possibility of flight by the shoplifter and the possibility of injury to a customer do not necessarily create a jury issue on whether Dye was negligent. "Even though the intervening cause may be regarded as foreseeable, the defendant is not liable unless the defendant's conduct has created or increased an unreasonable risk of harm through its intervention." W.P. Keeton, *Prosser and Keeton on the Law of Torts* § 44, at 305 (5th ed. 1984). Nevertheless, the Court of Special Appeals concluded:

> "We submit that there is no reliable test that will determine the reaction of a shoplifter caught in the act. Some will submit meekly, others may resort to tears and beg forgiveness, some will flee, and still others may react with physical violence directed toward anyone present. It is not a defense, as a matter of law, that the storekeeper can assert that he did not know the thief would flee. Common sense would indicate that if fleeing would preclude prosecution, the hares would certainly outnumber the tortoises. This is especially true in the case where the storekeeper provoked the dangerous course of action by grabbing the bag from behind [and] wrestling with the thief in the walkway.... Pellucidly, the issues of foreseeability and

---

2. There are at least two reported cases under the facts of which foreseeability of flight and harm was treated as an issue of law. In each case the shoplifter was stopped outside of the store and returned peacefully with security employees through some substantial portion of the store premises before the thief broke and ran through the store toward an exterior exit. In both cases judgments on verdicts for customers with whom the fleeing thieves collided were reversed as a matter of law on appeal for want of foreseeability that the thief would react violently toward customers. *Knight v. Powers Dry Goods Co.,* 225 Minn. 280, 30 N.W.2d 536 (1948); *Radloff v. National Food Stores, Inc.,* 20 Wis.2d 224, 121 N.W.2d 865 (1963).

proximate cause are for the jury." [3]

96 Md.App. at 156, 623 A.2d at 1311.

▮ By focusing exclusively on foreseeability and proximate causation the Court of Special Appeals failed to give any effect to Giant's privilege to protect its property from theft. "Any property owner, including a storekeeper, has a . . . privilege to detain against his will any person he believes has tortiously taken his property." *Great Atlantic & Pacific Tea Co. v. Paul,* 256 Md. 643, 656, 261 A.2d 731, 739 (1970).

▮ Restatement (Second) of Torts § 100 (1965) recognizes that "[t]he use of force against another for the sole purpose of retaking possession of a chattel is privileged," if certain conditions are met. Those conditions, in general and as relevant here, are:

1. The person against whom the force is used has tortiously taken the chattel;

2. The actor is entitled to immediate possession as against the other;

3. The recaption is effected promptly;

4. "The actor has first requested the other to return the chattel, or the actor reasonably believes that such a request would be useless, dangerous, or likely to defeat the effective exercise of the privilege";

5. "The force is employed for the purpose of effecting the recaption"; and

6. The force is reasonable.

---

3. The matter omitted from the above quotation reads, "and attempting to subdue him again while either or both of them were on top of Ms. Mitchell." 96 Md.App. at 156, 623 A.2d at 1311. At oral argument in this Court counsel for Ms. Mitchell conceded that there was no evidence under which any bodily injuries suffered in the second scuffle between the shoplifter and Dye at the grating of the cart corral could be segregated from her injuries caused by the collision with the shoplifter. This case was not tried on the theory that the jury could consider the second scuffle as a separate, potential cause of action. Consequently we shall not consider whether the second scuffle constitutes a distinct cause of action that might be maintained here based solely on the bodily contact and without proof of any other harm.

Restatement (Second) of Torts § 100 comment *c* (1965). Under the uncontradicted evidence of Dye, these conditions were met. With respect to condition numbered four, the shoplifter's immediate reaction to Dye's placing his hand on the shopping bag containing the cigarette cartons was to struggle, thus manifesting that a verbal request for a return of the goods was useless. Further, Dye testified that his only purpose in initially confronting the thief was to get back the cigarettes.

■ In any event, even if Dye did not satisfy fully each of the limiting conditions on the exercise of the privilege described in § 100 of the Restatement, Dye had probable cause to believe that the young man headed out of the Giant store had shoplifted from Giant. Under those circumstances Dye enjoyed a statutory privilege, *viz-a-viz* the shoplifter, to detain him, in the sense that neither Dye nor Giant could "be held civilly liable for detention, slander, malicious prosecution, false imprisonment, or false arrest of the person detained or arrested." Md.Code (1974, 1989 Repl.Vol.), § 5–307 of the Courts and Judicial Proceedings Article.

■ If the Court of Special Appeals were correct (as we assume it was) as to the foreseeability of some shoplifters' running when confronted, and if that foreseeability, without more, were sufficient evidence of primary negligence on the storekeeper's part in cases of the subject type, then the policy underlying the common law and statutory privileges, reviewed above, would be considerably undermined. The correct statement of the rule for determining whether the storekeeper has exercised ordinary care in cases of this type is found in Restatement (Second) of Torts § 111 (1965), which reads:

"Liability to Third Person.

"An act which is privileged for the purpose of recaption of a chattel subjects the actor to liability to a third person for any harm unintentionally done to him only if the actor realizes or should realize that his act creates an unreasonable risk of causing such harm."

In other words, simply because flight by some shoplifters is foreseeable, a storekeeper is not per se liable when a shoplifter, fleeing apprehension by the storekeeper, collides with a customer. Rather, taking into account all of the circumstances, the degree of risk of flight and the degree of risk of harm to invitees must be weighed against the privilege when determining if exercise of the privilege created an unreasonable risk of injury to invitees.

Illustrating sufficient evidence of an unreasonable risk of harm to third persons in the use of force, there by an armed, private-security guard, is *Giant Food, Inc. v. Scherry,* 51 Md.App. 586, 444 A.2d 483 (1982). The security guard had observed an armed robbery in progress in the store, but did not take any action until the robber had left the store. Seeing the robber enter an automobile, the guard shouted a warning that was ignored. As the vehicle sped away, the guard fired two shots from his handgun, the second of which entered the plaintiff's dwelling across the street from the store. The court rejected the storekeeper's argument that the use of deadly force was justified as a matter of law, pointing out that when the shots were fired the apparent robber posed no imminent danger to persons and that the guard could have noted the escape vehicle's license number. *Id.* at 594, 444 A.2d at 486.

There are a number of decisions by courts in other states involving collisions by running shoplifters and business invitees of storekeepers who have confronted the shoplifters. The results vary, based on the facts, and to some extent, on the legal analysis applied. The common denominator of the cases is their recognition that the storekeeper generally has a right to attempt to apprehend a shoplifter. Consequently the cases focus on whether the attempted apprehension, under the particular facts presented, did or did not involve an unreasonable risk of harm to business invitees. We review these cases for the purpose of emphasizing that their results are fact specific, and not for the purpose of indicating agreement or disagreement with these particular results.

In *Steffensen v. Smith's Management Corp.*, 862 P.2d 1342 (Utah 1993), the plaintiff sought to overturn a judgment on jury verdict for the defendant, contending that the store was negligent in failing to apprehend the shoplifter before he reached the checkout counters. The court refused to impose that duty, concluding it would be wholly unreasonable to require apprehension before the storekeeper had a stronger basis for believing that the suspect did not intend to pay. There was no evidence of primary negligence in *Martin v. Piggly Wiggly Corp.*, 469 So.2d 1057 (La.App.1985), where the security officer was pushed to the ground by an accomplice of the suspect while the security officer was attempting to handcuff the suspect. Summary judgment for the defendant was affirmed in *Butler v. K–Mart Corp.*, 432 So.2d 968 (La.App. 1983). Butler, while standing outside of the store, was struck by an exit door thrown open by a shoplifter, but Butler had no proof that there had been any pursuit of the shoplifter within the store. The court said that "[a]lthough it is arguable that shoplifting is a foreseeable occurrence, the likelihood that a shoplifter would bolt from the store, throw open a door and injure someone is remote." *Id.* at 969. Nor, per the holding in *Graham v. Great Atlantic & Pacific Tea Co.*, 240 So.2d 157 (Fla.Dist.Ct.App.1970), is a storekeeper negligent for failing to exercise absolute physical control over a shoplifter, apprehended on the parking lot, who appeared to be voluntarily returning to the store.

There was sufficient evidence of storekeeper negligence to support a judgment for the plaintiff in *Brock v. Winn Dixie La., Inc.*, 617 So.2d 1234 (La.Ct.App.), *cert. denied*, 620 So.2d 848 (La.1993), where a store manager observed shoplifting from a distance of sixty feet.[4] The manager shouted for another employee to get to the front of the store, thereby alerting the thief who bolted and ran through a nearby checkout aisle, injuring the plaintiff. Summary judgment for

---

4. The shoplifter, a seventeen year old male, was stuffing into his trousers two bottles of whiskey, each bottle of the one-fifth of a gallon size.

the defendant was reversed in *Passovoy v. Nordstrom, Inc.*, 52 Wash.App. 166, 758 P.2d 524 (1988), based on evidence of a failure to warn. There, three department store detectives apprehended two shoplifters on the main floor of the store and took them up a flight of stairs and through the men's department to a security office. When one suspect attempted to run, and was being subdued by two of the detectives, the second thief, pursued by the third detective, ran through the men's department and back down the stairs where he collided with the plaintiffs. The court concluded that there was an inference of negligence, inasmuch as the third detective had the opportunity to shout a warning to persons on the stairs to protect themselves.

Judgment for the plaintiff against a food supermarket was sustained in *Bolden v. Winn Dixie*, 513 So.2d 341 (La.Ct. App.), *cert. denied*, 514 So.2d 1177 (La.1987), because two store employees, who were assigned to guard an apprehended shoplifter in the meat cutting area while waiting for the police to arrive, turned their attention away from the thief and permitted his escape. There was sufficient evidence of negligence toward invitees using the entrance doors to prevent summary judgment for the defendant in *Jones v. Lyon Stores*, 346 S.E.2d 303 (N.C.Ct.App.), *cert. denied*, 349 S.E.2d 861 (N.C.1986). The design of the store doors in that case was apparently similar to that of the doors in the case before us. When the Lyon Stores manager saw a shoplifting incident, he ordered the exit doors locked, but allowed the entrance doors to remain unlocked. Thus, the thief's only avenue of escape was the entrance door, through which he ran when it was opened either by the plaintiff or by a customer preceding the plaintiff, by walking on the treadle of the "in" door. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901 (Tex.1980), reinstated a judgment on jury verdict for the plaintiffs where store detectives, who had arrested shoplifters in a shopping mall, outside of the store, chased the escaping shoplifters while the latter ran through the crowded mall.

In the case *sub judice* Ms. Mitchell's principal theory of breach of duty rests on the attempted apprehension itself.

We have neither found, nor been directed to, any decision that imposes liability under facts similar to those of the instant case. Here, there is no evidence that any customer was in the immediate area when Dye approached the thief as the latter stepped onto the first exit door treadle. Dye's attempt to retake possession of the cartons of Giant's cigarettes took place in what was, for all practical purposes, an isolation chamber. On one side was the glass wall of the enclosed vestibule. On the other side was the grating separating the entrance lane from the exit lane. Ahead of Dye and the thief was the exit door, which may or may not have been opened by their weight on the treadle, but which was not the door that customers would use to enter the store. Behind them was the first of the exit doors, which may or may not have been open, but any departing customer would be able to see the struggle in the enclosed vestibule and not enter it. Even assuming as foreseeable that the shoplifter might not return the goods peacefully, that he might struggle, that he might break free, and that he would then run, the purpose of running would be to escape. Most fleeing shoplifters would seek to avoid collisions because they would only impede flight. As a matter of law under all of these circumstances, Dye did not expose Giant's business invitees to an unreasonable risk of injury. To conclude otherwise, under the circumstances here, would impose liability to customers for almost any attempted apprehension of a shoplifter by storekeepers.

Indeed, the facts of the case before us are considerably stronger for the reasonableness of the defendant's conduct than those presented in *Brown v. Jewel Companies, Inc.*, 175 Ill.App.3d 729, 125 Ill.Dec. 139, 530 N.E.2d 57, *cert. denied,* 125 Ill.2d 563, 130 Ill.Dec. 478, 537 N.E.2d 807 (1988). There the "plaintiff was a customer in defendants' store, and was in the process of leaving, when a suspected shoplifter, being chased by guards, knocked plaintiff through a door and onto a sidewalk...." 125 Ill.Dec. at 140, 530 N.E.2d at 58. The plaintiff contended that the guard should not have "pursued the suspect when he knew or should have known that customers would thereby be endangered." *Id.* Concluding that the

complaint failed to state a claim for the injury inflicted on the plaintiff by the shoplifter, the court said:

> "We hold that security guards have no duty to refrain from pursuing suspected shoplifters under the facts alleged. As we have pointed out, the likelihood of very serious injury resulting to customers from a collision with a customer is not great. The likelihood of such an injury occurring is not increased very much because of the guard's pursuit, since most shoplifters will flee as quickly as possible when they have been stopped, regardless of whether pursuit takes place. The consequence of a rule against pursuit would be a substantial encouragement to shoplifting and would place an unreasonable burden upon the retailer. The duty of the guard is not to refrain from pursuit, but, as we have held in upholding part of the allegations of the complaint, the duty of the guard is to use ordinary care that he not collide with and injure a customer in that pursuit."

125 Ill.Dec. at 141–42, 530 N.E.2d at 59–60.

Ms. Mitchell also points to the stipulated fact that, throughout the Giant chain of many stores, there are hundreds of shoplifting crimes each year, and that shoplifting had occurred at the Kettering Plaza store. Her contention is that Giant should have, but had not, trained its employees in the approved method or methods of dealing with shoplifters. Assuming, *arguendo*, that Giant breached its duty to customers by failing to train employees as alleged, that breach in the instant case is negligence in the abstract only. That negligence could not be a proximate cause of the injury to Ms. Mitchell because we have already held as a matter of law that Dye, even if he were untrained, did not expose Ms. Mitchell to an unreasonable risk of injury.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER A MANDATE AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. COSTS IN THIS*