**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEANNE D. BYRD, individually;
CLYDE BYRD, her husband,
Plaintiffs-Appellees,

No. 98-2261

v.

WAL-MART STORES, INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-96-27-CCB)

Argued: October 28, 1999

Decided: January 13, 2000

Before WIDENER, WILKINS, and TRAXLER, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jeffrey M. Kotz, JEFFREY M. KOTZ, P.A., Towson,
Maryland, for Appellant. Kevin Anthony Dunne, OBER, KALER,
GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellees.
**ON BRIEF:** Marc K. Cohen, OBER, KALER, GRIMES &
SHRIVER, P.C., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Wal-Mart Stores, Incorporated ("Wal-Mart") appeals a jury verdict against it in this negligence action brought by Jeanne D. Byrd and her husband Clyde Byrd. Wal-Mart contends that the district court erred in denying its motions for judgment as a matter of law, see Fed. R. Civ. P. 50, and in instructing the jury that the Byrds could prove liability under the doctrine of res ipsa loquitur . Because we conclude that the district court correctly denied Wal-Mart's motions for judgment as a matter of law but erred in instructing the jury regarding res ipsa loquitur, we reverse the verdict and remand for a new trial.

I.

The Byrds brought this diversity suit against Wal-Mart, a discount retailer, for injuries Mrs. Byrd suffered at an Elkton, Maryland Wal-Mart store when she was struck on the head and left shoulder by several boxes of toy merchandise that fell from a shelf known as a "riser," which was approximately six feet high. Mrs. Byrd had been looking at toy trucks on a bottom shelf at about 3:00 p.m. on a Sunday afternoon and had not noticed any other shoppers or store employees in the aisle with her when the boxes fell and knocked her unconscious. Byrd testified that she had not touched the boxes and did not know why they fell. Indeed, no witness could explain how the boxes fell or how they were positioned on the riser just prior to the accident. Steve Cauley, the store manager, testified that based upon his review of photographs of the scene taken after the accident, he "guess[ed]" that some toys stacked in the area of those that fell on Byrd may have been stacked as high as thirty-eight inches above the six-foot riser. J.A. 135.

Cauley provided some information about how boxes were usually stacked in the store. He explained that it was Wal-Mart's practice to

2

stack merchandise on a riser "no more than three boxes high," and that thirty inches above the riser was used as a"guideline," although safety was the controlling factor. J.A. 99. He further explained that after stocking a riser, employees bumped the shelving unit to ensure the merchandise was stable. Cauley also noted that all stocking at the Elkton store -- except for replenishing of seasonal merchandise -- was done overnight while the store was closed and was completed by 9:00 a.m. Further, no stocking took place on Saturday night or on Sunday, the day the accident occurred. Accordingly, the boxes that fell on Mrs. Byrd must have been stacked by 9:00 a.m. on Saturday.

Cauley further testified that despite signs posted on the risers asking customers to seek assistance in taking items from the risers, falling merchandise most commonly occurred when customers attempted to retrieve items from the risers. Two other store employees testified that they had witnessed customers climbing up the shelves and taking merchandise off of the risers. Indeed, Mrs. Byrd testified that her husband had obtained merchandise from a riser without asking a Wal-Mart employee for assistance during a prior visit to Wal-Mart.

At the conclusion of the Byrds' case, Wal-Mart moved for judgment as a matter of law, see Fed. R. Civ. P. 50(a), on the ground that the Byrds had failed to present evidence from which a jury could reasonably conclude that negligence on the part of Wal-Mart was a proximate cause of Mrs. Byrd's injuries. More specifically, Wal-Mart contended that as a matter of law the doctrine of res ipsa loquitur did not apply to establish the Byrds' prima facie case of negligence. The court reserved ruling on the motion at that time but subsequently denied it when it was renewed after the conclusion of the entire case. See id. Additionally, the district court, over Wal-Mart's objection, instructed the jury on the doctrine of res ipsa loquitur.

Following deliberations, the jury returned a verdict awarding $208,745.40 in damages to the Byrds. Wal-Mart timely renewed its motion for judgment as a matter of law, see Fed. R. Civ. P. 50(b), and alternatively sought a new trial, see Fed. R. Civ. P. 59. The district court denied both motions.

II.

We review the denial of a motion for judgment as a matter of law de novo, viewing the facts in the light most favorable to the prevailing

3

party. See Konkel v. Bob Evans Farms Inc., 165 F.3d 275, 279 (4th Cir. 1999), cert. denied, 68 U.S.L.W. 3106 (U.S. Oct. 4, 1999) (No. 99-180). The decision to give a jury instruction is reviewed for abuse of discretion. See United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992). A decision to give an instruction on res ipsa loquitur is appropriate if the evidence in the record is sufficient to support a reasonable conclusion by the jury that the requisite elements of the doctrine are satisfied. See Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734, 740 (5th Cir. 1980).

A.

Under Maryland law, the duty owed by a storekeeper to his customers is simply to maintain the premises in a reasonably safe condition. See Giant Food, Inc. v. Mitchell, 640 A.2d 1134, 1135 (Md. 1994). Although he is not an insurer of his customers' safety, see id., a storekeeper is liable for his customers' injuries that are shown to have been proximately caused by the storekeeper's failure to take reasonable measures to ensure that the premises are safe, see Rawls v. Hochschild, Kohn & Co., 113 A.2d 405, 407 (Md. 1955). Included in the duty of a storekeeper to protect its customers is a duty to protect them from the reasonably foreseeable negligent acts of other customers. See Giant Food, 640 A.2d at 1135.

Wal-Mart first contends that the Byrds did not establish a prima facie case of negligence and therefore the district court erred in denying Wal-Mart's motions for judgment as a matter of law. We disagree, concluding that a jury reasonably could infer from the evidence presented that Wal-Mart's shelving and stacking of the boxed toys at a height from which they could fall onto the heads of customers standing in the aisles created an unreasonable danger. See Wooley v. Great Atl. & Pac. Tea Co., 180 F. Supp. 529, 531 (W.D. Pa. 1960) (holding that a jury reasonably could conclude that storeowner was negligent in stacking soup cans in a pyramid fashion, six to eight cans high on the top shelf of a display rack, when there was no testimony as to what caused the cans to fall and the store owner could anticipate that his employees and shoppers might rearrange the display so as to make it unstable); Dougherty v. Great Atl. & Pac. Tea Co., 289 A.2d 747, 748-49 (Pa. Super. Ct. 1972) (holding that a jury reasonably could conclude that stacking goods on a shelf six feet or higher for

4

selection by customers created an unreasonable risk that an employee would not stack the items correctly or that a customer's difficulty in reaching the items could cause subsequent disarray which ultimately could result in items falling from the shelf); see also Pullia v. Builders Square, Inc., 638 N.E.2d 688, 695 (Ill. App. Ct. 1994) (explaining that "[s]tore owners who desire to stack merchandise vertically in order to increase profit should be liable for a customer's foreseeable injury resultant from the practice"); cf. O'Shea v. K. Mart Corp., 701 A.2d 475, 477 (N.J. Super. Ct. App. Div. 1997) (holding that trier of fact reasonably could find that height of the display combined with the heavy nature of the item displayed created unreasonable risk of harm); Garvin v. Bi-Lo, Inc., No. 99-3057, 1999 WL 956447, at *5 (S.C. Ct. App. Oct. 18, 1999) (holding that stacking boxed canned goods from the floor to a height of more than five feet and putting the items on sale so as to encourage customers to take them created a genuine issue of material fact as to whether the store was negligent). The evidence of the measures Wal-Mart took to discourage customers from taking items from the risers would not prevent a jury from reasonably concluding that Wal-Mart was negligent in stacking boxed toys at the height it did. A jury reasonably could conclude that despite those measures, Wal-Mart could foresee that its customers would retrieve merchandise from the risers without asking for assistance. Accordingly, the district court correctly denied Wal-Mart's motions for judgment as a matter of law.

B.

Wal-Mart also maintains that because the Byrds failed as a matter of law to demonstrate that the boxes that fell were in Wal-Mart's exclusive control prior to the accident, the district court erred in instructing the jury that it could find liability based on res ipsa loquitur. We agree.

In spite of the general rule that a premises owner is not an insurer against a customer's injuries, under certain circumstances a jury is permitted under the doctrine of res ipsa loquitur to infer negligence on the part of the premises owner even when the customer cannot demonstrate that a particular negligent act of the premises owner proximately caused her injuries, i.e., when there is no direct evidence of negligence. See Dover Elevator Co. v. Swann , 638 A.2d 762, 765

5

(Md. 1994). In order to rely on res ipsa loquitur, a plaintiff must prove three elements: (1) an injury of the type that does not ordinarily occur in the absence of negligence; (2) the injury was caused by an instrumentality in the defendant's exclusive control; and (3) the injury was not caused by an act or omission of the plaintiff. See Holzhauer v. Saks & Co., 697 A.2d 89, 92-93 (Md. 1997).

In Holzhauer, the Maryland Court of Appeals explained the role of the exclusive control element:

> The element of control has an important bearing as negativing the hypothesis of an intervening cause beyond the defendant's control, and also as tending to show affirmatively that the cause was one within the power of the defendant to prevent by the exercise of care. Thus it has been held that [res ipsa loquitur does not apply] where ... the opportunity for interference by others weakens the probability that the injury is attributable to the defendant's act or omission.

Id. at 93 (internal quotation marks omitted) (second alteration in original). Although the plaintiff need not demonstrate that it is impossible that someone other than the defendant could have caused the accident in order to rely on res ipsa loquitur, see Gleason v. Jack Alan Enters., Inc., 374 A.2d 408, 411 (Md. Ct. Spec. App. 1977), the plaintiff does have to demonstrate control sufficiently exclusive to support a reasonable, nonspeculative conclusion by the factfinder that the defendant's negligence -- and not that of a third party -- was the cause of the accident, see Holzhauer, 697 A.2d at 93; Joffre v. Canada Dry Ginger Ale, Inc., 158 A.2d 631, 636 (Md. 1960).

The facts here are analogous to those in Holzhauer, in which the Maryland Court of Appeals held that the plaintiff failed as a matter of law to prove that the instrumentality was in the exclusive control of the defendant. There, the plaintiff sought recovery from a department store for injuries he sustained when the escalator on which he was riding came to an abrupt stop. See Holzhauer, 697 A.2d at 90. The evidence established that the escalator was equipped with two emergency stop buttons that were accessible not only to the store's employees, but also to its patrons. See id. at 91. Even though there was no evidence that the escalator had stopped because one of these

6

buttons had been activated, the court held that because "the escalator's two emergency stop buttons [were] readily accessible to all persons in the vicinity and any customer [could have caused] the escalator to stop simply by pressing one of the buttons," the plaintiff failed as a matter of law to demonstrate exclusive control and therefore could not rely on res ipsa loquitur. See id. at 94.

Here, as in Holzhauer, any number of the defendant store's customers had unlimited access to the instrumentality that caused the plaintiff's injuries.**1** Indeed, in the present case, Wal-Mart not only presented testimony that customers had access to the instrumentality that caused the plaintiff's injury, but it also presented evidence that customer tampering of the kind that could have caused Mrs. Byrd's injuries actually had occurred many times in the past. In fact, Cauley testified that in his experience, customer interference was the most prevalent cause of merchandise falling from risers. Even Mrs. Byrd admitted that her husband had removed merchandise from the risers on a prior visit to Wal-Mart. Accordingly, the Byrds, as a matter of law, failed to "negat[e] the hypothesis of an intervening cause beyond the defendant's control," and therefore failed to create a jury issue regarding the applicability of res ipsa loquitur . Holzhauer, 697 A.2d at 93 (internal quotation marks omitted); see Chesapeake & Potomac Tel. Co. v. Hicks, 337 A.2d 744, 763 (Md. Ct. Spec. App. 1975) (stating that "[w]here the instrumentality which causes the injury is constantly subject to the uses and abuses of the public the doctrine will not be applied") (internal quotation marks omitted).

The present case is clearly distinguishable from Leidenfrost v. Atl. Masonry, Inc., 201 A.2d 336 (Md. 1964), on which the Byrds rely. In Leidenfrost, the plaintiff sustained injuries when he was struck by some slag blocks at a construction site, and he sued the masonry subcontractor that had accepted delivery of the blocks. See id. at 337-38. The blocks had been stacked about one-and-a-half to two hours before they fell. See id. at 338. The foreman for the masonry subcontractor testified that his company was the only one on the site using the type of blocks delivered and that he was uncertain whether employees of other subcontractors were at the site that morning. See id. at 339. He

_____

**1** Testimony established that 25,000 to 30,000 paying customers visited the Elkton Wal-Mart each week.

7

further testified that even if other subcontractors were on the site, they would have had no right to disturb the blocks and little reason for doing so. See id. The Maryland Court of Appeals concluded that a jury reasonably could believe that the masonry subcontractor had exclusive control of the blocks, noting that "[t]he circumstances of the injury rule out the inference that the falling of the blocks was caused by the interference of a third person." Id. at 339. In so holding, the court stated that the time between the act of negligence and the injury is a factor to be considered and noted that a "plaintiff is not required in his proof to exclude remotely possible causes and reduce the question of control to a scientific certainty." Id.

There is a substantial difference between the proof of exclusive control in the present case and that presented in Leidenfrost. Here, the time between the stacking and the accident was more than a full day, rather than two hours. More importantly, the instrumentality that caused the accident was one to which third parties had access and, indeed, did disturb regularly. Thus, unlike in Leidenfrost, the evidence here was not sufficient to rule out the inference that third-party tampering caused the accident.**2**

Accordingly, the jury could not have ruled out the possibility that the instability of the merchandise on the risers was due to the act of a customer rather than that of a Wal-Mart employee. The district court erred, therefore, in instructing the jury on the doctrine of res ipsa loquitur. Although the evidence was sufficient to justify a reasonable conclusion by the jury that Wal-Mart proximately caused Mrs. Byrd's injuries by stacking its merchandise at an unreasonable height, there

_____

**2** The present case is also easily distinguishable from Leikach v. Royal Crown Bottling Co. of Baltimore, 276 A.2d 81 (Md. 1971), and Munzert v. Am. Stores Co., 192 A.2d 59 (Md. 1963), on which the Byrds rely as well. In these cases, the plaintiffs were able to exclude the inference of third-party intervention. In Leikach, there was testimony that the instrumentality that caused the accident was not left unattended when customers could access it; in Munzart, testimony showed that the instrumentality that caused the harm was left unattended for no more than five minutes. In the present case, the merchandise that fell had been on the shelf for at least 24 hours, and the record is void of testimony indicating that the merchandise had been attended during any of that time.

8

is no way for us to discern whether the jury actually reached that conclusion or whether it based its finding of liability on res ipsa loquitur. Consequently, the proper remedy is to remand for a new trial. See Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co., 370 U.S. 19, 29-30 (1962) (holding that when a general verdict may rest on an erroneous ground, and there is no way to discern otherwise, the verdict must be set aside).

III.

In sum, we conclude that the district court correctly denied Wal-Mart's motions for judgment as a matter of law, but erred in instructing the jury regarding res ipsa loquitur. Accordingly, we reverse the jury verdict and remand for a new trial.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

9