# THE HOPKINS CHEMICAL COMPANY

## *vs.*

## THE READ DRUG AND CHEMICAL CO. OF BALTIMORE CITY.

*Master and servant: corporations; liability for torts of servant; slander; slander of tradesmen, etc.; mere disparagement of wares, not—.*

The acts of a servant, done in the course of his master's service, and for the master's benefit, if within the general scope of his employment, are to be treated as those of the master, although no express command or privity of the master be shown, and even though committed in opposition to the master's orders.

pp. 213, 214

The question whether the act of a servant complained of, was in furtherance of the master's business, or within the scope of the employment, is generally one of fact, to be determined by the jury.                                        p. 214

In such cases, the burden of proof is on the defendant to show that the servant was not engaged in the course of his employment.                                        p. 214

A declaration in slander for words uttered by a servant of a corporation, is not open to demurrer merely because it fails to allege that the words complained of were uttered by the authority of the defendant, or that they were subsequently ratified by it.                                        . pp. 214-215

A corporation may be held responsible for the torts of its agent, done while acting within the general scope of his employment, although without express authority, or subsequent ratification, and even though the question of malice be involved.

pp. 213-214

No recovery of damages can be had in an action of slander, where the words are not actionable *per se,* unless special damages are alleged and proved.                          p. 215

Defamatory language, when used in disparagement of a person's property, or of the quality of the articles which he manufactures or sells, and which contains no imputation upon him as an individual, or in respect to his office, profession or trade, is not actionable, unless special damages can be shown.

p. 215

To say of a dentifrice that it "contains grit that would take or scratch the enamel from the teeth and other ingredients injurious to the gums," does not amount to an imputation against the manufacturer of the dentifrice, sufficient to render the words actionable *per se,* and without special damages being alleged and proved.                          p. 217

*Decided November 11th, 1914.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Clifton S. Brown,* for the appellant.

*Albert J. Fleishmann,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from the action of the Court below in sustaining the demurrer to a declaration in slander.

The appellant in its declaration alleged that "it is now and was on December 12th, 1913, the sole manufacturer of a tooth paste known as the 'A. C. Reynolds Tooth Paste;' that at great expense the plaintiff has advertised the said tooth paste as the 'A. C. Reynolds Tooth Paste,' and by that name it is now and was on December 12th, 1913, known and sold to the public. That the defendant, its agent or agents, on or about December 12th, 1913, while endeavoring to make a sale of another article of dentifrice handled and sold by it in its store at the southeast corner of Lexington and Howard streets, Baltimore, Maryland, falsely and maliciously spoke to one Marie E. Judge of and concerning the aforesaid 'A. C. Reynolds Tooth Paste' (which tooth paste is guaranteed by the plaintiff under the Pure Food and Drug Act of June 30, 1906, serial number 3922) the following dafamatory words, 'that it,' meaning the A. C. Reynolds tooth paste, 'was nothing else but grit, was very harmful to the gums and also would take the enamel off your teeth.'" In the second count the defamatory words as averred therein, are "that it," meaning the A. C. Reynolds tooth paste, "was a cheap product, good only for polishing the surface of the teeth and that it contained harmful ingredients, principally grit, which would scratch the enamel from the teeth." And in the third count the words complained of are, "that it," meaning the A. C. Reynolds tooth paste, "was full of grit and scratched the enamel from the teeth, and very injurious to the gums."

For the injuries alleged to have been suffered by the plaintiff because of the utterance of such defamatory words, the plaintiff claimed ten thousand dollars damages. No special damage was alleged.

The objections urged by the defendant against the sufficiency of the declaration were: 1st. That it is not averred in the declaration that the alleged defamatory words spoken by the agent were authorized by the defendant corporation, or that such words were subsequently ratified or approved by it; and 2nd. That the utterances were not slanderous *per se,* and no special damage was alleged in the declaration. We

will consider these questions in the order in which they are presented.

In *Consolidated Ry. Co.* v. *Pierce,* 89 Md. 495, JUDGE BOYD, quoting from *Evans* v. *Davidson,* 53 Md. 245, said: "In one sense where there is no express command by the master, all wrongful acts done by the servant may be said to be beyond the scope of the authority given; but the liability of the master is not determined upon any such restricted interpretation of the authority and duty of the servant. If the servant be acting at the time in the course of his master's service, and for his master's benefit, within the scope of his employment, then his act, though wrongful or negligent, is to be treated as that of the master, although no express command or privity of the master be shown." *Hypes* v. *Southern Railroad Co.,* 21 L. R. A. (N. S.) 873; *Sawyer* v. *Railroad,* 142 N. C. 7.

In the case of *Hypes* v. *Southern Railroad Co., supra,* the action there was brought against the defendant railroad company and its general division superintendent to recover damages for alleged slanderous words spoken by such agent. A demurrer was interposed to the declaration; the objection urged against it being, as in this case, that the declaration contained no allegation that such agent was expressly directed or authorized by the corporation to speak the words com plained of. The Court there said: "It is established that corporations, as well as natural persons, are liable for the wilful tort of an agent acting within the general scope of his employment without previous express authority or subsequent ratification. The old doctrine that a corporation, having no mind, cannot be liable for acts of agents involving malice, has been completely exploded in modern jurisprudence. While a corporation is *non personal* in its formal legal entity, it represents natural persons and must necessarily perform its duties through natural persons as agents, hence must spring the correlative responsibility for the acts of its agents within the scope of their employment."

The learned Court in that case affirmed the action of the lower Court in overruling the demurrer to the declaration, holding that it was unnecessary to allege any express direction or authority by the corporation for the utterance of the words complained of, or that the same were subsequently ratified by such corporation.

In the case of *Sawyer* v. *Railroad, supra,* likewise an action for slander, the Court there, quoting from *Wood on Master and Servant,* sec. 279, said: "The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders."

This seems to be the settled rule of law applicable to cases of this character in this and other jurisdictions.

As was said by this Court in the *Consolidated Ry. Co.* v. *Pierce, supra,* "The question whether the act of the servant complained of was in furtherance of the master's business, within the scope of the servant's employment, is generally one of fact to be determined by the jury. In *Cleveland* v. *Newsom,* 45 Mich. 62, it was held that the burden was on the defendant to show that the servant was not engaged in the course of his employment. In *Rounds* v. *Delaware, Lack. & West. R. R. Co.,* 64 N. Y. 129, the Court said it is ordinarily a question to be determined by the jury. But, as was said in *Ritchie* v. *Waller* (63 Conn. 155), when the servant's deviation from the strict course of his employment or duty is slight and not unusual, the Court may determine, as a matter of law, that he is still executing the master's business, and if the deviation is very marked and unusual, it may determine the contrary."

It is clear to us, applying the well settled rule of law stated above, that the declaration of the plaintiff is not defective

because it fails to allege that the words complained of were uttered by the authority of the defendant corporation, or that such utterances were subsequently ratified by such corporation.

The second objection urged against the sufficiency of the declaration presents the sole question whether the defamatory words complained of are actionable *per se,* that is, actionable without special damage. If they are found not to be actionable without special damage, then there can be no recovery unless special damage is alleged and proven. *DeWitt* v. *Scarlett,* 113 Md. 51; *Pollard* v. *Lyon,* 91 U. S. 225 (L. Ed., page 314); *Dooling* v. *Budget Pub. Co.,* 144 Mass. 258; *Boynton* v. *Shaw Stocking Co.,* 146 Mass. 221.

The defamatory words were here spoken in disparagement of the quality of an article of dentifrice manufactured by the plaintiff. By the law of libel and slander defamatory language is actionable without special damage when it contains an imputation upon one in respect of his office, profession or trade. But it is not actionable at all when it is merely in disparagement of one's property or of the quality of the articles which he manufactures or sells, unless it occasions special damage. The language, however, may not only be spoken in disparagement of the property, but may also contain an imputation upon the manufacturer or vendor in respect to his trade or business, in which event such words will be actionable *per se.*

It seems to be a generally accepted rule of law of libel and slander that defamatory language, when it is used merely in disparagement of a person's property or of the quality of the article which he manufactures or sells and contains no imputation upon him as an individual or in respect to his office, profession or trade, is not actionable unless special damage can be shown. *Victor Safe & Lock Co.* v. *Deright,* Amer. & Eng. Anno. Cases, Vol. 8, 809, and note thereunder. *Kennedy* v. *Press Publication Co.,* 41 Hun. (N. Y.), 422; *Tobias* v. *Harland,* 4 Wendell, 537.

It is true that some of the cases seem to be in conflict with this rule, but as it was said in *Kennedy* v. *Press Publication Co.,* 41 Hun. (N. Y.), 422, "the conflict is more apparent than real. A libel on a thing may constitute a libel on a person. Thus to say of a brewer that he adulterates his beer would be a libel upon him in his trade, not because of the allegation that the beer was bad, but because the language would import deceit and malpractice on the part of the brewer. It is, therefore, at times difficult to determine whether the publication attacks. the person or merely the thing, and any apparent conflict in the authorities arises out of this difficulty. There is no dispute as to the principle, the difference is only as to the application of the rule."

In the case of *Dooling* v. *Budget Pub. Co., supra,* it was said, words relating merely to the quality of articles made, produced, furnished or sold by a person, though false and malicious, are not actionable without special damage, for example the condemnation of books, paintings and other works of art, music, architecture, and generally of the product of one's labor, skill or genius may be unsparing, but it is not actionable without the averment and proof of special damages unless it goes further and attacks the individual.

With this rule of law before us, we are to inquire whether the words here spoken impute to the plaintiff such misconduct, deceit or malpractice in the manufacture or disposition of its product as to enable us to say that the words spoken are actionable *per se.*

It is here said of the article of dentifrice manufactured by the plaintiff that it contained grit that would take or scratch the enamel. from the teeth and other ingredients which were harmful or injurious to the gums. This language can hardly be said to attack the plaintiff or to impute to it deceit or malpractice in the manufacture of its article of dentifrice. No reference is made to the plaintiff at all. The tooth paste may have contained ingredients the effect of which, when used for cleansing the teeth, was to take the enamel therefrom or injure the gums. But this all could be

true and yet not impute to the plaintiff any deceit or malpractice in the manufacture of the article. It may have contained an ingredient, that is characterized by the plaintiff as grit, that was intended to have the effect of polishing the teeth, and yet either because of its quality or quantity it may have had the effect mentioned in the alleged defamatory words, and so far as the utterances themselves disclose, such effects resulting from the use of the paste might have been unknown to the plaintiff; it is nowhere charged with the knowledge of these conditions.

To hold that these words contain an imputation against the plaintiff in respect of its trade or business, so as to render them actionable *per se,* or actionable without special damage, would be giving an unwarranted meaning to such utterance.

Our attention has been called by the plaintiff to the case of *Blumhardt* v. *Rohr,* decided by this Court and reported in 70 Md. 328. This case differs widely from the case before us. In that case the defamatory words charged the plaintiff with buying and slaughtering diseased cattle and selling their meat to his customers, an offense punishable under the common law. It is true, the Court did not rest its decision in the case entirely upon that ground, it also held that the defamatory words charged him with misconduct that was calculated to injure his business. It can not, we think, be gathered from the facts, alleged in the declaration, that the defamatory words charge the plaintiff with any violation of the Federal Statute known as the Pure Food and Drug Law, Chapter 3915 of the Acts of 1906, for which an action would lie without special damage as contended for by the plaintiff.

We find no error in the ruling of the Court below in sustaining the demurrer to the declaration. The judgment will therefore be affirmed.

*Judgment affirmed, with costs to appellee.*