**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

S. REBECCA DACHMAN,
Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

No. 96-2817

Defendant-Appellee,

and

WILLIAM DAVID SCHWIETERMAN,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-96-1261-PJM)

Argued: December 4, 1997

Decided: July 23, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Steven L. Zelinger, Washington, D.C., for Appellant.
George Levi Russell, III, Assistant United States Attorney, Baltimore,
Maryland, for Appellee. **ON BRIEF:** Stephen L. Neal, Jr., Washing-

ton, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. Rebecca Dachman appeals the district court's dismissal of her case, its decision to substitute the United States as defendant, and its finding that Dr. William Schwieterman was acting within the scope of his employment when he filed criminal charges against her. We affirm.

I

On July 15, 1994, Schwieterman, the acting Branch Chief in the Food and Drug Administration's Clinical Trials Branch and Dachman's immediate supervisor, received a death threat on his voicemail. He promptly reported this incident to his supervisors and they instructed him to contact the police. Schwieterman informed his supervisors that he believed Dachman left the message. On July 18, 1994, before the police or the FDA had completed their investigations, Schwieterman filed an Application for a Statement of Charges in the District Court of Maryland for Montgomery County. Based on that application Dachman was arrested on July 22, 1994. On December 20, 1994, the state entered a nolle prosequi . The FDA subsequently concluded that the claim against Dachman was unsubstantiated.

On February 26, 1996, Dachman filed this action in a state court against Schwieterman alleging malicious prosecution, negligence, and abuse of process. On April 22, 1996, the United States filed a petition of removal and moved to be substituted as the party defendant, certi-

2

fying that Schwieterman was acting within the scope of his employment and, therefore, the plaintiff's sole remedy was against the United States. 28 U.S.C. § 2679. The district court granted this motion despite the plaintiff's opposition and then, based on this ruling, dismissed the complaint for lack of subject matter jurisdiction, because Dachman had not exhausted her administrative remedies pursuant to 28 U.S.C. § 2675.

II

Both the district court and this court review the Attorney General's certification of the scope of employment de novo . Gutierrez de Martinez v. Lamango, 515 U.S. 417 (1995); Gutierrez de Martinez v. Drug Enforcement Admin., 111 F.3d 1148, 1152 (4th Cir. 1997) (on remand from the Supreme Court); McHugh v. Univ. of Vermont, 966 F.2d 67, 71-74 (2d Cir. 1992). In Maron v. United States , 126 F.3d 317, 322-23 (4th Cir. 1997), we held that the plaintiff has the burden of proving by a preponderance of the evidence that the government employee was not acting within the scope of his employment.

Dachman claims that the district court erred when it failed to conduct a de novo review of the scope of employment issue and when it denied her further discovery on material issues of fact concerning Schwieterman's employment. Dachman misunderstands the district court's actions. The district court applied the correct standard of review to the issue, and properly held that further discovery on the scope of employment issue was unnecessary.

The district court did not merely accept the government's certification as conclusive. The court made a thorough inquiry into the issue that spans 40 pages in the joint appendix. During this inquiry in response to Dachman's motion for reconsideration, the court undertook its duty to determine whether Schwieterman was acting within the scope of his employment. After both sides had an opportunity to present their case, the district court reached its decision. We find that the court met its obligation to conduct a de novo review of the issue. The district court's review was not the kind of rubber stamp denounced in Gutierrez de Martinez, 515 U.S. at 429.

Dachman claims that further discovery is required on a number of disputed facts. The core facts of this case, however, are undisputed.

3

Schwieterman received a threat that he correctly took seriously. The threat was received on the employer's premises during working hours. Further, there is no dispute that Schwieterman contacted his supervisors about the threat, that they instructed him to call the police, and that this initial call was within the scope of his employment. Later his supervisor excused him from work during business hours so that he could file an application for a statement of charges in the state district court. His supervisor concluded her affidavit by stating: "At all times relevant to the aforementioned incident Dr. Schwieterman was authorized by me to conduct himself the way he did." A.82. Although Dachman disputes the details, there is no dispute that Schwieterman called security guards to remove Dachman from his office two days prior to the death threat. After listening to all the undisputed facts, the court decided that further discovery on the certification issue was unnecessary.

III

Dachman also asserts that the district court erroneously determined that Schwieterman was acting within the scope of his employment under Maryland law. Both parties agree that Maryland law controls this issue. Under Maryland law an act is within the scope of employment if it is authorized. Sawyer v. Humphries , 322 Md. 247, 255, 587 A.2d 467, 470-71 (Md. 1991). An act is authorized if it "was incident to the performance of the duties entrusted to [the servant] by the master, even though in opposition to [the master's] express and positive orders." Id. at 255, 470 (quoting Hopkins Chem. Co. v. Read Drug & Chem. Co., 124 Md. 210, 214, 92 A. 478, 479-80 (Md. 1914). In applying this test a court determines if the conduct is of the kind that the servant is employed to perform, occurs during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and is actuated at least in part by a purpose to serve the master. Id. at 255, 471.

Dachman maintains Schwieterman acted outside the scope of his employment. She claims that filing criminal charges was not the kind of work that Schwieterman was employed to perform and that he filed the charges to satisfy his personal motives. She also claims that he did not act with the authorization of his supervisors and that Schwieter-

4

man disregarded applicable written procedure by filing the criminal charges.

Dachman's analysis of Schwieterman's actions is incorrect. Schwieterman was employed by the FDA as a doctor, and we agree that he was not hired to file criminal charges against other employees. Part of his job, however, was to ensure workplace safety. FDA procedures required Schwieterman to report possible criminal conduct or general misconduct. Schwieterman followed all applicable procedures by reporting the incident to his supervisors and the police. Dachman concedes Schwieterman's initial report to the police was within the scope of his employment. While the applicable FDA procedures do not address the filing of criminal charges, we hold that filing criminal charges after contacting the police about a death threat was a foreseeable step and is not an act which takes Schwieterman's conduct outside the scope of his employment.

Dachman places great weight on the fact that Schwieterman did not wait for the police or the FDA to finish their investigations before he filed criminal charges. Dachman's reliance on this fact is misplaced. There is no exhaustion requirement in the FDA procedures, nor did Schwieterman's supervisors tell him to wait for the investigations to finish before filing charges. Filing criminal charges before the investigations were complete was still an authorized act done in furtherance of the FDA's legitimate business interest of safety.

AFFIRMED

5