**Rathea WILLIAMS**

v.

**CLOVERLEAF FARMS DAIRY, INC., William Campofreda, and Amber Daugherty.**

**No. Civ. Y–98–676.**

United States District Court, D. Maryland.

Dec. 14, 1999.

Jerome J. Blake, Baltimore, MD, and John H. Morris, Jr., Baltimore, MD, for plaintiff.

Matthew T. Angotti, Baltimore, MD, and Stacie Free Farley, Baltimore, MD, for defendant Cloverleaf Farms Dairy, Inc.

Terence J. O'Connell, Rockville, Maryland, for defendant Amber Daugherty.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

This case is before the Court on a Motion for Summary Judgment filed by Cloverland Farms Dairy Inc. ["Cloverland"]. The Plaintiff, Rathea Williams ["Williams"] filed a civil complaint alleging various common law and civil rights claims against Cloverland, William Campofreda, and Amber Daugherty in the Circuit Court for Baltimore County on December 11, 1997. Cloverland removed the case to this Court in March 1998 and filed its Motion for Summary Judgment on October 12, 1999.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir.1995). The mere existence of a scintilla of evidence in support of Plaintiff's case is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Plaintiff's evidence, however, is to be believed and all justifiable inferences are to be drawn in her favor. *Id.* at 255, 106 S.Ct. 2505.

### II. Factual Background [1]

This case arose from a December 13, 1996, incident at a Royal Farms convenience store in Reisterstown, Maryland, owned by Cloverland. The Plaintiff, Rathea Williams, a black woman, entered the store to make a purchase on her way to work. At the time, Amber Daugherty was working as a store clerk and was on duty, but was talking and laughing with a customer, William Campofreda. Both Daugherty and Campofreda are white.

As Williams approached the cash registers to pay for her items, she made a passing comment about some confusion at the check-out counter. The comment apparently caught Campofreda's attention, and he called Williams "a Beavis & Butthead" [sic]. Campofreda then began to make derogatory racial comments toward Williams. This slur was merely one in a string of racial invective and profanity uttered by Campofreda. He also took change from his pocket and hurled it at

---

1. Because the facts in the case remain in dispute, the version reported here reflects the Plaintiff's recollections.

Williams. During this time, Williams claims that Daugherty laughed and continued talking with Campofreda.

At a break in the dispute, the other Royal Farms cashier came over to Williams, who paid for her items. The cashier gave her change and a receipt. By this time, however, Daugherty had joined in the racial slurs. When Williams threatened to report Daugherty and Campofreda, Daugherty repeated the racial slur and told her to leave the store. Campofreda then spit in Williams' face, ran out of the store, and allegedly threatened to kill her. Williams followed him outside and noted his license plate number. She tried to call the police from a pay phone outside the store, but when she could not complete the call, she crossed the street to make her call from a liquor store.

Meanwhile, Daugherty had called the police and they had responded to the Royal Farms. When she saw that the police had arrived, Williams returned to the Royal Farms and told the police her story. Daugherty was soon terminated from her job at the Royal Farms for use of profanity and improper handling of the dispute. Williams filed criminal charges and then instituted this civil claim.

In her complaint, Williams asserted six counts against the Defendants, four of which are pertinent here: Count I alleges infliction of emotional distress; Count II alleges negligence by Daugherty;[2] Count III alleges negligence by Cloverland in hiring and training Daugherty; and Count IV alleges violations of 42 U.S.C. § 1981.

### III.   Discussion

#### A. *Count I: Intentional Infliction of Emotional Distress*

■ Williams alleges that Daugherty's actions subjected her to emotional distress, and she seeks to hold Cloverland vicariously liable. Seeking to avoid liability, Cloverland argues that *respondeat superior* is not available because Daugherty's acts were outside the scope of her employment.

■ Under the doctrine of *respondeat superior,* the master or employer may be held liable for the torts of a servant or employee, but only if the employee was acting within the scope of employment when the tortious activity occurred. *See Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991). Although "there are few, if any, absolutes" involved in determining whether an employee's acts occurred within the "scope of employment," the general test in Maryland is that the acts must have been authorized and in furtherance of the employer's business. *Id.* at 255, 587 A.2d at 470–71. "Authorized" in this context does not mean actually sanctioned, but rather that the act was "incident to the performance of the duties entrusted to [the employee] by the master, even though in opposition to his express and positive orders." *Id.* (quoting *Hopkins C. Co. v. Read Drug & C. Co.,* 124 Md. 210, 214, 92 A. 478, 479–80 (1914)).

■ Various factors come into play when making this inquiry, including: (1) whether the conduct is the kind the servant is employed to perform; (2) whether it occurred during a period not unreasonably disconnected from the authorized period of employment; (3) whether it occurred in the vicinity of the authorized area of employment; and (4) whether it was actuated, at least in part, by a purpose to serve the employer. *See id.* at 255, 587 A.2d at 471. In the case of intentional torts, the employee will be found to have been acting beyond the scope of employment where the acts were personal and departed from the purpose of promoting the employer's interests. *See id.* at 256–57, 587 A.2d at 471. This is particularly true where the employee's conduct was "unprovoked, highly unusual, and quite outrageous." *Id.* at 257, 587 A.2d at 471.

On the present record, the Court is unable to find as a matter of law that Daugh-

---

**2.** Williams has since abandoned her Count II   claim.

erty was acting beyond the scope of her employment when she committed the alleged tort. Indeed, considering the disputed facts with all inferences in Williams' favor, the record suggests that Daugherty intervened in the dispute between Campofreda and Williams and attempted to make Williams leave the premises. Although a trial may reveal that Daugherty's acts were motivated by personal animus—and, thus, were not within the scope of her employment—intervening in a dispute between customers and removing a customer from the premises are activities commonly associated with the duty of a store employee. Because a reasonable juror could find that Daugherty acted with the purpose of furthering her employer's interests, the Court will deny Cloverland's Motion on this issue.

### B. *Count III: Cloverland's Negligence in Hiring and Training*

■ Williams also alleges that Cloverland was negligent in hiring and training Daugherty. Specifically, Williams argues that Cloverland breached its duties (1) to train its employees to act in accordance with 42 U.S.C. § 1981; and (2) to use care in selecting employees who are psychologically and emotionally capable of performing their duties in accordance with prevailing legal standards.

■ A store owner has a duty of reasonable care to the general public, which extends to dangers caused by the storekeeper's employees. *See Giant Food, Inc. v. Mitchell,* 334 Md. 633, 636–37, 640 A.2d 1134, 1135 (1994). With regard to liability for employee's torts, Maryland has recognized causes of action for an employer's negligent hiring, *see Evans v. Morsell,* 284 Md. 160, 395 A.2d 480 (1978), and would most likely recognize a cause of action for an employer's negligent failure to train, at least in some circumstances, *see Giant Food,* 334 Md. at 649, 640 A.2d at 1141–42; *see also* 27 Am.Jur.2d Employment Relationship § 477 (1996 & 1999 Supp.). To establish a cause of action for

negligent hiring or supervision, the plaintiff must show that her injury was caused by the tortious conduct of an employee, the employer knew or should have known that the employee was capable of inflicting harm of some type, the employer failed to use proper care in hiring or training the employee, and the employer's breach was the proximate cause of the plaintiff's injury. *See Bryant v. Better Bus. Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 751 (D.Md.1996).

Cloverland does not challenge the sufficiency of Williams' claim, but rather argues that she has failed to state a claim, as a matter of law, because her assertion is based on a violation of 42 U.S.C. § 1981. In support of its position, Cloverland cites *Bryant, supra,* for the proposition that courts may not impose liability on an employer for failing to prevent a harm that was not a cognizable injury under the common law. Because race discrimination in violation of § 1981 would not be a common law tort, Cloverland argues, the Court may not hold it liable in this case.

The Court disagrees. Williams' Complaint stated all the necessary elements for a claim of negligent hiring and training, including injury by Daugherty's tortious conduct. Assuming *arguendo* that *Bryant* applies here, it would not alter the outcome because the tortious acts alleged in Williams' Complaint would have been cognizable injuries under the common law, *e.g.,* infliction of emotional distress or torts arising from business or contractual relationships. *See* West's Maryland Law Encyclopedia, Torts §§ 14–15 (1997). As such, Cloverland's argument fails and its Motion will be denied.

### C. *Count IV: Violation of 42 U.S.C. § 1981(b)*

■ Section 1981 secures to every citizen the right to make and enforce contracts free from race discrimination. 42 U.S.C. § 1981(a)–(b). Williams asserts that Daugherty violated her right to buy items at the Royal Farms store and Clo-

verland should be vicariously liable for her violations. Cloverland contends that it is entitled to judgment as a matter of law on Williams' § 1981 claims because Cloverland cannot be vicariously liable for Daugherty's violations, and, in any case, Williams' right to contract was not impaired by Daugherty's conduct.

■■■■ The Court rejects Cloverland's argument as to vicarious liability. It is well-established that an employer may be liable under *respondeat superior* theory for its employees' violations of § 1981. *See Fitzgerald v. Mountain States Telephone & Telegraph Co.*, 68 F.3d 1257, 1262–63 (10th Cir.1995); *Von Zuckerstein v. Argonne National Laboratory*, 78 F.3d 587, 1996 WL 88073 (7th Cir. Feb.27, 1996) (unpublished); *EEOC v. Gaddis*, 733 F.2d 1373, 1380 (10th Cir.1984); *Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir. 1979); *Dickerson v. City Bank & Trust Co.*, 590 F.Supp. 714, 716–17 (D.Kan.1984); *Jones v. Local 520, Int'l Union of Operating Engineers*, 524 F.Supp. 487, 492 (S.D.Ill.1981). General common law principles of *respondeat superior*[3] hold that an employee's tortious acts will be imputed to the employer when the acts were within the scope of employment. *See* Restatement (Second) of Agency § 219 (1957).[4] Because there are disputed factual issues as to whether or not Daugherty was acting within the scope of her employment during the incident with Williams, a trial on the merits will be necessary.

Cloverland contends that it cannot be held liable for Daugherty's acts because the company never authorized, ratified, or approved Daugherty's conduct. This argument, however, rests on an improper interpretation of the law. In *Yates v. Hagerstown Lodge No. 212 Loyal Order*

*of Moose*, 878 F.Supp. 788, 795 (D.Md. 1995), this Court held that Moose International could not be held vicariously liable for § 1981 violations carried out by a local lodge and the lodge president unless the plaintiff was able to show that Moose International had knowledge of the circumstances and either authorized, ratified, or approved the illicit conduct. In contrast to the master-servant relationship involved in the present case, however, *Yates* addressed the relationship between a principal and a non-servant agent and is, therefore, inapposite. *See* Restatement (Second) of Agency § 216 cmt. a (noting broader range of conduct for which liability may be imputed in master-servant relationship). The relevant rule in this case is that a master may be liable via *respondeat superior* for acts within the servant's scope of employment. *See id.* § 219.

■■■ Cloverland further argues that it cannot be liable, even under *respondeat superior*, because there was no § 1981 violation. In particular, it asserts that because Williams was able to complete her transaction at the Royal Farms, she is absolutely barred from claiming a violation of § 1981.

■■■ The Court disagrees. The record shows that Williams attempted to make a purchase from Daugherty, but was deterred by the alleged racial slurs made by Daugherty and Campofreda. Although Williams was eventually able to purchase items from another cashier, the Court refuses to find that this delay in completing the transaction, coupled with the alleged racial attack, is insufficient as a matter of law to establish a violation of § 1981. Section 1981 violations need not be extended or unmitigated to qualify the plaintiff for damages. Although the length or nature

---

**3.** Because § 1981 liability is an issue of federal law implicating common law principles, the Court considers, not the law of any one state, but "the general common law" of *respondeat superior*. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, ——, 119 S.Ct. 2118, 2128, 144 L.Ed.2d 494 (1999). In such

instances, the Restatement's codification of the common law provides a useful starting point. *See id.*

**4.** The Restatement defines "scope of employment" much along the lines of the Maryland caselaw discussed above.

of the violation may affect the plaintiff's award, the fact that an act of contractual discrimination was short or *de minimis* does not make it any less a violation. Indeed, as this Court noted in *Yates,* "[c]ivil rights are founded not on a relativist calculus of discriminatory behavior but on the principle that deprivations of rights resulting from racial animus are unlawful." 878 F.Supp. at 796. The length of the deprivation Williams suffered is, therefore, immaterial at this stage and the Court will deny Cloverland's Motion.

## D. *Punitive Damages*

### 1. *State Law Counts*

■ Cloverland seeks to preclude Williams from receiving punitive damages from Cloverland under Count I of her Complaint. Maryland law requires a finding of actual malice before a jury may award punitive damages. *Montgomery Ward v. Wilson,* 339 Md. 701, 733, 664 A.2d 916, 932 (1995). "Actual malice," in this context, refers to "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Id.* Punitive damages may not be based on a theory of "implied malice" and must be established by "clear and convincing evidence." *Bowden v. Caldor, Inc.,* 350 Md. 4, 23–24, 710 A.2d 267, 276–77 (1998). An employer may be held liable for punitive damages arising from the conduct of its employees within the scope of employment. *See Embrey v. Holly,* 293 Md. 128, 137–38 442 A.2d 966, 970–71 (1982).

Here, Williams seeks punitive damages from Cloverland for the alleged infliction of emotional distress carried out by Daugherty. As discussed earlier, there is a material issue of fact as to whether Daugherty was acting within the scope of her employment when she committed the alleged tort; if she was, however, Mary-

land law would allow punitive damages against Cloverland.[5]

### 2. *Federal Law Counts*

■ Cloverland may be liable for Daugherty's violations of § 1981, but it argues that its liability should be circumscribed to exclude punitive damages. Specifically, Cloverland argues that an employer may not be held liable in punitive damages, absent fault, for an employee's violation of § 1981. The issue is a question of first impression in this Circuit.

In *Fitzgerald v. Mountain States Tel. & Telegr. Co.,* 68 F.3d 1257, 1263–64 (10th Cir.1995), the court noted that § 1981 allows for *respondeat superior* liability, but eventually found that an employer could not be held liable for punitive damages for an employee's § 1981 violation. The court looked for guidance from the Restatement (Second) of Torts, which states:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> (a) the principal or a managerial agent authorized the doing and manner of the act, or
>
> (b) the agent was unfit and the principal or managerial agent was reckless in employing or retaining him, or
>
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909 (1979); Restatement (Second) of Agency § 217C (same). Because the alleged wrongdoer was not a manager, the employer had not authorized or ratified the violations, and the employer was not negli-

---

**5.** Defendant has also sought a ruling that would bar an award of punitive damages under Count III of Williams' Complaint. Because Williams has not requested punitive damages for this count in the pleadings, and

has made no allegation of actual malice in connection with this count, the Court will preclude her from seeking punitive damages at trial.

gent in hiring her, the court denied punitive damages against the employer. *Fitzgerald*, 68 F.3d at 1263–64.

The Court holds that the same result should follow in the present case. Federal law governs damages in civil rights cases, *see* 42 U.S.C. § 1988(a), and the Restatement serves as a reasonable starting point for determining the correct legal standards. This Court adopts the reasoning of *Fitzgerald* and holds that the Restatement (Second) of Torts § 909 standards control in claims for punitive damages under § 1981.[6] *Cf. Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir.1979) (holding that employer may be held liable under § 1981 for discrimination by supervisory employee).

Applying these standards to the present case, it is clear that Williams may not recover punitive damages against Cloverland. She has not provided evidence that Cloverland authorized, ratified, or approved Daugherty's actions. To the contrary, the record shows that Daugherty was fired for her involvement in the dispute. Moreover, there is no evidence that Daugherty was unfit for the job or that Cloverland was reckless in employing her. Finally, although the Court has found a genuine question of fact as to whether Daugherty was acting within the scope of her employment, it is clear that she was not acting in a managerial capacity. Therefore, because Williams cannot bring her claim within the rule adopted here, Cloverland cannot be held liable for punitive damages resulting from Daugherty's violations of § 1981.

### IV.   Conclusion

Based on the foregoing analysis, the Court will deny Cloverland's Motion for

---

6. The Court also notes that the Supreme Court adopted § 909 of the Restatement (Second) of Torts as the starting point for determining the scope of *respondeat superior* liability allowed for punitive damages under Title VII. *See Kolstad*, 527 U.S. at ——, 119 S.Ct. at 2128–29. Comparing the standards for scope of employment under the Restatement (Second) of Agency § 228 and the standards for

---

Summary Judgment with regard to Counts I, III, and IV. The Court will, however, grant Cloverland's motion with regard to punitive damages under Counts III and IV.

---

awarding punitive damages in the *respondeat superior* context under the Restatement (Second) of Torts § 909, the Court ultimately determined that the latter would override the former so that an employer would not be held liable for punitive damages when its managerial agents acted in contravention of the employer's good faith efforts to comply with Title VII. *See id.*