864 A.2d 1027

## FELLAND LIMITED PARTNERSHIP

v.

## DIGI–TEL COMMUNICATIONS, LLC.

No. 20, Sept. Term, 2003.

Court of Appeals of Maryland.

Dec. 22, 2004.

Reconsideration Denied Feb. 2, 2005.

Stephen H. Ring (Stephen H. Ring, P.C., on brief), Gaithersburg, for petitioner.

Roger W. TItus (Samantha M. Williams, Venable, LLP, on brief), Rockville, for respondents.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

ELDRIDGE, J.

This is a private action, for monetary damages, under the Telephone Consumer Protection Act, 47 U.S.C. § 227, against an employer based upon an employee's alleged violations of the federal statute. The alleged violations consisted of broadcasting unsolicited commercial telephone facsimile advertisements. The trial court granted the defendant's motion for summary judgment on the ground, *inter alia*, that the employee's actions were not within the scope of his employment and that, therefore, the employer was not liable, under the principle of *respondeat superior*, for the employee's actions. The Court of Special Appeals affirmed on an alternative ground which had also been relied on by the trial court. We shall hold that the evidence was insufficient to generate a triable issue that the employee's alleged unlawful actions were within the scope of his employment. Consequently, we shall affirm the decisions below on this ground.

I.

The basic facts relevant to the scope of employment issue in this case are, for the most part, undisputed. To the extent that there is any dispute over these facts or the reasonable inferences to be drawn from them, we shall set forth such facts or inferences in the light most favorable to the plaintiff. *See, e.g., Lee v. Cline,* 384 Md. 245, 863 A.2d 297 (2004); *Walk v. Hartford Casualty,* 382 Md. 1, 14, 852 A.2d 98, 106 (2004); *Jurgensen v. New Phoenix,* 380 Md. 106, 114, 843 A.2d 865, 869 (2004); *Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 533–534, 836 A.2d 655, 669 (2003); *Remsburg v. Montgomery,* 376 Md. 568, 579–580, 831 A.2d 18, 24 (2003).

The defendant-respondent, Digi–Tel Communications, LLC, was formed in 1998 as a limited liability company organized pursuant to the laws of Virginia. The company sells cellular telephones and service as an authorized representative of

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Nextel Communications, Inc. Digi–Tel has retail business locations in the following municipalities: Fairfax, Virginia; Winchester, Virginia; Vienna, Virginia; Rockville, Maryland; and Baltimore, Maryland.

In 1999, Digi–Tel hired John Taylor as a sales representative. The written employment contract between Digi–Tel and Taylor, in the first paragraph of the contract, provided that "[t]he duties of the Representative [Taylor] shall be those of a sales representative and in connection therewith the Representative shall represent the Company in the solicitation, sale, lease and promotion of products to purchasers, and users of such products and services." The employment contract went on to provide, in paragraph six, that Digi–Tel had the right "to set policies, standards and guidelines for the conduct" of the sales representative, that the sales representative agreed to abide by such policies, standards and guidelines, and that Digi–Tel's policies and procedures were incorporated into the employment contract. Paragraph 16 of the employment contract stated that the sales representative "shall in no case be authorized to change, modify or make exceptions to Company policies [and] procedures . . ., nor enter into any agreement or contract which would bind the Company for any debt or obligation." The contract recited that Digi–Tel "shall not compensate" Taylor "for certain travel, or entertainment, expenses related to performing the business of the Company" and that Digi–Tel would pay to Taylor "commissions on all sales completed by" Taylor. Taylor's only compensation from Digi–Tel consisted of the sales commissions.

The written employment contract between Digi–Tel and Taylor did not mention advertising at all. Thus, the employment contract itself neither expressly authorized nor expressly prohibited Taylor from creating and using advertising via facsimile to sell the Nextel products and services. Nevertheless, the written contract between Digi–Tel and Nextel required that all of Digi–Tel's advertising "must receive Company's [Nextel's] prior written approval."

Several affidavits, the deposition of John Taylor, the pertinent contracts, and other documents were submitted to the trial court in connection with Digi–Tel's motion for summary judgment and the plaintiff's opposition thereto. The affidavit by the President of Digi–Tel stated in relevant part as follows:

"3. Digi–Tel sells cellular telephones and service for Nextel Communications, Inc. ('Nextel') pursuant to a contract. A true and correct copy of Digi–Tel's contract with Nextel is attached hereto as *Exhibit A.*

"4. Virtually all of Digi–Tel's advertising materials, including flyers, are created by Nextel. Digi–Tel does not create its own advertising because all such advertising would have to be approved by Nextel in advance pursuant to a clause of the contract. . . ."

"5. Digi–Tel employs a full-time Director of Marketing, Sam Talbert, who is responsible for placing advertisements on Digi–Tel's behalf. The bulk of Digi–Tel's advertising is done through newspaper and radio. Talbert does not have the authority to place an advertisement without my approval or the approval of one of the other two officers of the company.

"6. Digi–Tel does not, and has never, used fax machines to promote its business or to advertise in any way. Digi–Tel has only seven fax machines and these are used for receiving incoming faxes or communicating with current customers or other entities with whom Digi–Tel does business."

\* \* \*

"9. Taylor's duties for Digi–Tel are to sell cellular telephones and service for which he is compensated on a commission-only basis. Taylor's duties do not include creating or placing advertisements for Digi–Tel.

"10. Taylor is assigned to work out of Digi–Tel's Virginia office during normal business hours. Digi–Tel provides Taylor with a cubicle, a desk, and a telephone to enable him to sell Digi–Tel's products. In addition, Digi–Tel provides

Taylor with all advertising materials, including written flyers, which are, in turn, provided to Digi–Tel by Nextel.

"11. Digi–Tel did not learn that Taylor had hired Capital Fax ('Capital') to send advertisements regarding Digi–Tel's services until January 2002, when Digi–Tel's attorneys provided Digi–Tel with a copy of Exhibit A referenced in the Complaint and bearing John Taylor's name.

"12. Taylor's actions in creating an advertising flyer and hiring Capital were all done without the knowledge of Digi–Tel and were wholly unauthorized."

John Taylor's affidavit set forth the nature of his duties for Digi–Tel and the facts underlying the alleged violations of the federal Telephone Consumer Protection Act. The pertinent portions of the affidavit are as follows:

"3. My duties for Digi–Tel are to sell Nextel Communications, Inc. ('Nextel') cellular telephones and service for which I am compensated on a commission-only basis. I have no other duties.

"4. I am assigned to work out of Digi–Tel's Fairfax, Virginia office during normal business hours. Digi–Tel provides me with a cubicle, a desk, and a telephone to enable me to sell Digi–Tel's products. In addition, all advertising materials are provided to me by Digi–Tel. I have been instructed by Digi–Tel to obtain advertising flyers by accessing Nextel's web site and printing out the flyers created by Nextel.

"5. My duties do not include creating or placing advertisements for Digi–Tel.

"6. I do not have authority to enter into contracts on Digi–Tel's behalf or to create advertising materials for Digi–Tel.

"7. In early January 2001, I was walking past the fax machine in Digi–Tel's Fairfax, Virginia office and saw an advertisement that had been faxed to Digi–Tel from Capital Fax ('Capital'). In the advertisement, Capital offered to send faxes to people in the Washington/Baltimore area for a fee.

"8.   Without informing anyone at Digi–Tel, I took Capital's advertisement off the fax machine, out of curiosity, and contacted Kevin Conner, the Capital employee referenced in the advertisement.   Conner assured me that Capital's services were legal.   I did not keep and no longer have a copy of Capital's advertisement.

"9.   As a result of my conversation with Conner, I received a letter and a price list from Capital.   A true and correct copy of the information I received from Capital is attached as *Exhibit B*.

"10.   Without informing anyone at Digi–Tel, I decided to hire Capital on my own.   I provided Capital with an advertising flyer that I created initially on my computer.   I also gave Capital my personal check for $100.   It was my understanding that I was hiring Capital on my own behalf and not on behalf of Digi–Tel.   Capital modified the flyer that I prepared by adding language at the bottom giving instructions to recipients who receive the flyer in error.

"11.   In the second half of February 2001, Conner provided me with a list of the telephone numbers to which Capital had faxed my flyer.   I did not keep the list and do not have it.

"12.   I have never requested reimbursement from Digi–Tel for the $100 I paid to Capital, nor have I been reimbursed.

"13.   I never informed anyone at Digi–Tel about my dealings with Capital until January 2002, when the President of Digi–Tel showed me the Complaint that had been filed against Digi–Tel and a copy of the flyer that I had created."

Taylor stated in his deposition testimony that he had, sometime in the past, read a Digi–Tel written "form" which had informed Digi–Tel's sales representatives that the use of "e-mail" and "faxes" was limited and that, "whether it be an e-mail or a fax, you can only send that to your own customers that you have already."   Taylor testified that he did not know "the reason for that policy" and that he was not aware of any

other *written* materials pertaining to sales representatives' "advertising activities." Taylor also testified that officers of Digi–Tel had specifically told him that he should not "use ... faxing as a means of sales of Digi–Tel's products" and that "[i]t was just a general policy that you're not supposed to do that." Taylor's deposition testimony concerning his use of Capital Fax to broadcast facsimile advertisements contained more detail than the account set forth in his affidavit, but Taylor's deposition testimony was entirely consistent with his affidavit. Taylor's deposition testimony concluded by stating that he had no authority from Digi–Tel to hire Capital Fax to send the facsimile advertisements, that he knew that he was violating Digi–Tel's policy, that he knew that he "shouldn't have done it," and that Digi–Tel officials gave him a "verbal" reprimand when they found out what he had done.

The plaintiff-petitioner Felland Limited Partnership submitted an affidavit by James Murphy who stated that he was "Vice President of Sales at Teltronic, Inc., a Maryland corporation maintaining its principal office in Kensington," Maryland. Teltronic "has been a Nextel Authorized Dealer selling Nextel phones and services since 1995." Murphy's affidavit represented that, "[d]uring 1998 several of Teltronic, Inc. Nextel customers advised our offices [that] they had received an advertisement via facsimile from Digi–Tel Communications, Inc. which is one of our competitors." The affidavit did not further identify the "customers" or the persons in Teltronic's "offices" who received this information. None of these "advertisements" was submitted to the Court, and no affiant or deponent purported to have seen or have personal knowledge of any facsimile advertisements sent by or on behalf of Digi–Tel except for those sent in 2001 by Capital Fax acting for John Taylor.

Felland Limited Partnership, an entity with its office in Kensington, Maryland, in early 2001 allegedly received on its fax machine some of the facsimile advertisements, for Nextel products and services, which were sent by Capital Fax pursuant to its contract with John Taylor. These faxes were sent from the District of Columbia. The copy of one of these

facsimile advertisements, which was submitted by Felland to the trial court, contained the word "NEXTEL" in very large print at the top of the advertisement, followed by information regarding Nextel's cellular telephones and services, and with John Taylor's name and telephone number in large print near the bottom of the advertisement. A paragraph of additional information concerning Nextel telephones and services was below Taylor's name and at the bottom of the advertisement. This paragraph contained the word "Nextel" six times, but did not contain the word "Digi–Tel." To the right of John Taylor's name and telephone number was, in fairly large print, the Nextel logo. To the left of Taylor's name and telephone number, in relatively small print compared to most of the rest of the advertisement, was the word "Digi–Tel." This is the only place that the word "Digi–Tel" appeared in the advertisement.

## II.

Felland filed a complaint against Digi–Tel, in the Circuit Court for Montgomery County, pursuant to the private cause of action provision of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3). Felland sought money damages, as provided for in the federal statute, for the unsolicited commercial facsimile advertisements allegedly sent by Capital Fax to Felland in early 2001.

Following some discovery, Digi–Tel filed a motion to dismiss, or, in the alternative, for summary judgment. Digi–Tel's principal argument was that John Taylor's actions, in hiring Capital Fax to broadcast unsolicited facsimile advertisements, were unknown to Digi–Tel, were not authorized by Digi–Tel, and were not within the scope of Taylor's employment with Digi–Tel. Alternatively, Digi–Tel contended that Maryland trial courts are not authorized to entertain private actions for damages under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3).

The Circuit Court, after a hearing, agreed with both of these arguments, granted Digi–Tel's motion, and directed the

entry of judgment for Digi–Tel. Because the parties and the Circuit Court relied on affidavits, deposition testimony, and various documents, the Circuit Court's order must be treated as a grant of summary judgment. *See* Maryland Rule 2–322(c). In holding that John Taylor's actions were not within the scope of his employment for Digi–Tel, the Circuit Court stated:

"I also find that under the undisputed facts in this case, that the material facts are not in dispute as to Mr. Taylor's conduct, and that his conduct was outside the scope of his employment by the defendant. And among the factors that I am considering are those that have been elicited by counsel, specifically that Mr. Taylor created the facsimile on his own and that the defendant was not aware of the facsimile at issue, that the defendant did not authorize the fax to be sent, and that the defendant's equipment was not used to send the fax, and that Mr. Taylor created the fax, paid for the sending of the fax on his own, and was not reimbursed by the defendant.

"So I also find that, under the facts as presented in this case, that there is no material fact in dispute, and accordingly, as a matter of law, find that Mr. Taylor's conduct was outside the scope of his employment."

"I will grant summary judgment as to the defendant with respect the plaintiff's claim."

Felland appealed to the Court of Special Appeals which affirmed in an unreported opinion. The intermediate appellate court, relying upon its earlier opinion in *R.A. Ponte Architects v. Investors' Alert*, 149 Md.App. 219, 815 A.2d 816 (2003), affirmed on the ground that Maryland trial courts lack jurisdiction to entertain the federal private cause of action created by the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3). In light of this holding, the Court of Special Appeals did not reach Digi–Tel's principal argument that John Taylor's actions were outside the scope of his employment.

Felland filed in this Court a petition for a writ of certiorari, presenting both the issue of state court jurisdiction over

actions under 47 U.S.C. § 227(b)(3) and the scope of employment issue. The Court granted the petition, *Felland v. Digi–Tel,* 374 Md. 582, 824 A.2d 58 (2003), and, as earlier stated, we shall affirm on the ground that Taylor's actions, forming the basis for this lawsuit, were outside the scope of his employment for Digi–Tel.

### III.

■ In *R.A. Ponte Architects, Ltd. v. Investors' Alert, Inc.,* 382 Md. 689, 857 A.2d 1 (2004), this Court reversed the Court of Special Appeals' decision in *R.A. Ponte Architects v. Investors' Alert, supra,* 149 Md.App. 219, 815 A.2d 816, and held that Maryland trial courts have jurisdiction to entertain the private causes of action for damages created by the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3). We re-affirmed this holding in *Levitt v. Fax.com,* 383 Md. 141, 857 A.2d 1089 (2004). Consequently, both the Court of Special Appeals and the Circuit Court erred in holding that private actions for damages, pursuant to 47 U.S.C. § 227(b)(3), could not be brought in Maryland trial courts.

■ Both sides agree that, if Maryland trial courts have jurisdiction over 47 U.S.C. § 227(b)(3) actions, the dispositive issue in this case is whether, under Maryland law, John Taylor's facsimile advertising activities were within the scope of his employment with Digi–Tel.[1]

---

1. Throughout this litigation, the plaintiff, the defendant, and the Circuit Court, have proceeded upon the assumption that Maryland common law controlled the scope of employment issue. Both sides have exclusively relied on cases involving Maryland common law scope of employment principles. Neither side has suggested the applicability of the law of Virginia (the place of the Digi–Tel and Taylor employment relationship and employment contract), or the law of the District of Columbia (the place from which the faxes were sent), or federal law (the law creating the cause of action), with respect to the scope of employment question. As a matter of Maryland appellate procedure, this Court coùld, in its discretion, either explore the choice of law issue *sua sponte,* or remand to the trial court for that court to decide the issue, or presume that another jurisdiction's law (if applicable) is the same as Maryland's, or accept for purposes of this case the parties' assumption that Maryland scope of employment law controls. *See Beale v. Ameri-*

Several opinions of this Court in recent years have delineated the general rules for determining whether an employee's wrongful acts are within the scope of employment, thereby rendering the employer liable for such acts. *See, e.g., Southern Management Corp. v. Taha,* 378 Md. 461, 480–481, 836 A.2d 627, 638–639 (2003); *Larsen v. Chinwuba,* 377 Md. 92, 105–109, 832 A.2d 193, 200–202 (2003); *Oaks v. Connors,* 339 Md. 24, 30, 660 A.2d 423, 426 (1995); *Ennis v. Crenca,* 322 Md. 285, 293–296, 587 A.2d 485, 489–491 (1991); *Sawyer v. Humphries,* 322 Md. 247, 255–260, 587 A.2d 467, 470–471 (1991). Instead of attempting to restate those rules, we shall simply quote the summary set forth in *Sawyer v. Humphries, supra,* 322 Md. at 255–256, 587 A.2d at 470–471 (some internal quotation marks omitted):

"The general test set forth in numerous Maryland cases for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were 'authorized' by the employer. In an often-quoted passage, the Court in *Hopkins Chemical Co. v. Read Drug & Chemical Co.,* 124 Md. 210, 214, 92 A. 478, 479–480 (1914), explained:

"The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the

*can National Lawyers Insurance Reciprocal (RISK Retention Group),* 379 Md. 643, 651–652 n. 5, 843 A.2d 78, 83–84 n. 5 (2004); *Chambco v. Urban Masonry,* 338 Md. 417, 420–421, 659 A.2d 297, 299 (1995); *Frericks v. General Motors Corp.,* 274 Md. 288, 296–297, 336 A.2d 118, 123 (1975). We do not intend to indicate any particular view on this choice of law issue. Furthermore, we do not suggest that there is a significant difference between Maryland scope of employment law and the law elsewhere. Nonetheless, we shall for purposes of this case accept the parties' assumption that Maryland scope of employment principles are controlling.

master, even though in opposition to his express and positive orders."

*    *    *

"In applying this test, there are few, if any, absolutes. Nevertheless, various considerations may be pertinent. The Court, in *East Coast Freight Lines v. Mayor & City Council of Baltimore, supra,* 190 Md. at 285, 58 A.2d at 304, summarized four of them:

"To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably disconnected from the authorized area, and actuated at least in part by a purpose to serve the master. *Mechem on Agency,* Section 36; *Huffcut on Agency,* Section 5; *American Law Institute, Restatement, Agency,* Section 228, comment (b))."

"In *Great Atlantic & Pacific Co. v. Noppenberger,* 171 Md. 378, 390–391, 189 A. 434, 440 (1937), after setting forth the factors quoted above, the Court went on to quote with approval the *Restatement of Agency* § 229 (1933), as follows:

"On the other hand, certain conduct of the servant may be within the scope of his employment, although not intended or consciously authorized by the master, but (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized. (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:—(a) whether or not the act is one commonly done by such servants; (b) the time, place and purpose of the act; (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether the act is outside the enterprise of

the master or, if within the enterprise, has not been entrusted to any servant; (f) whether or not the master has reason to expect that such an act will be done; (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) the extent of departure from the normal method of accomplishing an authorized result, and (j) whether or not the act is seriously criminal." *Id.,* 229.

\*    \*    \*

"In addition, an important factor is whether the employee's conduct was 'expectable' or 'foreseeable.' *Cox v. Prince George's County,* 296 Md. 162, 171, 460 A.2d 1038, 1042 (1983) . . . ."

In light of the above principles, it is clear that John Taylor's facsimile advertising activities were outside the scope of his employment with Digi–Tel.

If Digi–Tel sales representatives had been generally authorized to create advertisements and hire a company to disseminate them to the public, the fact that Taylor's specific conduct had been unauthorized might not be sufficient to render that conduct outside of the scope of his employment. Taylor's lack of authority, however, extended beyond the creation and broadcast of unsolicited facsimile advertisements.

According to the uncontradicted statements of Digi–Tel's President, "Taylor's duties do not include creating or placing advertisements for Digi–Tel." Taylor confirmed this, stating that "[m]y duties do not include creating or placing advertisements for Digi–Tel." Moreover, Taylor did "not have authority to enter into contracts on Digi–Tel's behalf." Digi–Tel's personnel generally were not authorized to create advertisements because of Digi–Tel's contract with Nextel. Instead, Digi–Tel used advertising materials created by Nextel. Furthermore, the placing of advertisements, even by Digi–Tel's Director of Marketing, required the approval by one of three Digi–Tel officers.

In a broad sense, the creation of advertising materials and the engagement of a company to disseminate them were not "incident to the performance of the duties entrusted to" Taylor, *Hopkins C. Co. v. Read Drug & C. Co.*, 124 Md. 210, 214, 92 A. 478, 480 (1914). Taylor's conduct was not "commonly done" by Digi–Tel sales representatives and was not "expectable or foreseeable" by the employer. *Sawyer v. Humphries, supra*, 322 Md. at 256, 587 A.2d at 471 (internal quotation marks omitted).

In arguing that Taylor's conduct was authorized, the petitioner Felland asserts that "[n]o business records support the claim that fax advertising [by sales representatives] was prohibited." (Petitioner's brief at 30). Nonetheless, the affidavits by the President of Digi–Tel and by John Taylor, as well as Taylor's deposition testimony, do show that fax advertising by sales representatives was prohibited. In addition, Taylor testified that he had read a Digi–Tel document prohibiting faxes sent to anyone except "to your own customers that you have already." Digi–Tel's written contract with Nextel also confirms the limitations upon Digi–Tel's advertising.

Felland further relies on the fact that the employment contract between Digi–Tel and Taylor did not "prohibit[ ] fax advertising." (Petitioner's brief at 32). It is also true that the employment contract did not authorize fax advertising. Even if the employment contract had stood alone, no reasonable inference either way could be drawn from the contract's silence. In light of the other evidence demonstrating the limitations upon advertising by sales representatives, it would be particularly unreasonable to draw an inference from the employment contract's silence that sales representatives were authorized to engage in the type of fax advertising involved in this case. While "a grant of summary judgment is improper" when the "facts are susceptible to inferences supporting the position of the party opposing summary judgment," nevertheless "[t]hose inferences ... must be *reasonable* ones." *Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 677–678, 541 A.2d 1303, 1310 (1988) (emphasis in original). *See also Beatty v. Trailmaster*, 330 Md. 726, 738–739, 625 A.2d 1005,

1011 (1993). The inference which Felland draws from the silence in the employment contract is simply not a reasonable one.

Felland suggests that Taylor's fax advertising was authorized because of the "prior fax advertising by Digi–Tel described in the affidavit of Mr. Murphy." (Petitioner's brief at 32). The Murphy affidavit, however, did not create a genuine and relevant factual dispute. It was not based on personal knowledge and, therefore, did not qualify under the summary judgment rule, Maryland Rule 2–501(c). It was vague, consisted of unsupported general statements, and related to a time period prior to Taylor's employment with Digi–Tel. *See Arroyo v. Board of Education*, 381 Md. 646, 654–655, 851 A.2d 576, 581 (2004), where Judge Cathell for the Court recently explained (internal quotation marks omitted):

> "Thus, once the moving party has provided the court with sufficient grounds for summary judgment, the non-moving party must produce sufficient evidence to the trial court that a genuine dispute as to a material fact exists. *See, e.g., Hoffman Chevrolet, Inc. v. Washington County Nat'l Sav. Bank*, 297 Md. 691, 712, 467 A.2d 758, 769 (1983). This requires produc[ing] facts under oath, based on the personal knowledge of the affiant to defeat the motion. Bald, unsupported statements or conclusions of law are insufficient."

Consequently, Felland did not generate a legitimate factual dispute concerning scope of employment. John Taylor's creation and dissemination of facsimile advertisements went beyond the scope of his employment with Digi–Tel.

*JUDGMENT AFFIRMED, WITH COSTS.*